367 So.2d 730 (1979)
The SCHOOL BOARD OF ORANGE COUNTY, Florida, Petitioner,
v.
John PALOWITCH, Orange County Classroom Teachers Association, and the Public Employees Relations Commission, Respondents.
No. 77-2469.
District Court of Appeal of Florida, Fourth District.
February 21, 1979.
John W. Bowen of Rowland, Petruska & Bowen, Orlando, for petitioner.
Mark F. Kelly and Richard H. Frank of Law Offices of Richard H. Frank, P.A., Tampa, for respondents, John Palowitch and Orange County Classroom Teachers Association.
Thomas W. Brooks, Asst. Gen. Counsel, Public Employees Relations Commission, Tallahassee, for respondent  PERC.
Peter J. Hurtgen, Miami, and R. Theodore Clark, Jr., Chicago, Ill., for amicus curiae  Florida Public Employer Labor Relations Association.
DAUKSCH, Judge.
This case involves a ruling by the Public Employees Relations Commission (P.E.R.C.) that the appellant violated Section 447.501(1)(c) Florida Statutes (1977) and thus committed an unfair labor practice by refusing to bargain collectively. We agree with the order of P.E.R.C. and deny certiorari.
John Palowitch is a teacher and is represented by the Orange County Classroom Teachers Association which is the duly certified bargaining representative for Palowitch and his colleagues. The appellant decided it would institute a quinmester system which is a year-round school period instead of the former two semester plus summer school system. When this decision was made another was made to change Palowitch and others from twelve months contract status to ten month contract status. The commission, P.E.R.C., found "such change in contract status carried with it *731 changes in the number of total work days, changes in compensation and changes in leave and holiday benefits." It also quite properly reasoned "whether these changes are viewed as beneficial or detrimental is irrelevant to the determination vel non (sic) of whether there was a unilateral change in terms and conditions of employment. A unilateral increase in benefits could foreseeably do more to undermine the bargaining representative's status than would a decrease." As to this last sentence it is quite important that the bargaining representative maintain the confidence and respect of its members in order to adequately represent them. If it is best to have bargaining representatives then they should be as effective as possible to promote the good of the membership. It has been determined best for both the employers and the employees for the employees to have bargaining representatives, also known as unions, guilds, labor organizations and other similar names. This is so as to the employer so that he is faced with one party representing all of a group instead of all members of the group clamoring around negotiating individual contracts which contracts can be quite detailed and complex.
When the decision to change the conditions of Palowitch's employment was made Palowitch was under contract and the appellant was negotiating with the bargaining representative for the next contract. Under Section 447.309(1), Florida Statutes (1977) it is required that "After an employee organization has been certified pursuant to the provisions of this part, the bargaining agent for the organization and the chief executive officer of the appropriate public employer or employers, jointly, shall bargain collectively in the determination of the wages, hours, and terms and conditions of employment of the public employees within the bargaining unit." We agree with the determination of P.E.R.C. that "... unilateral action taken by an employer to change the length of the work year is a per se violation of the duty to bargain collectively." Like the commission we do not question petitioner's authority to change from a semester to a quinmester system nor do we question the right of the employer to ultimately change the length of the service of various employees during the year. Section 447.209, Florida Statutes (1977). We do not agree with the petitioner's position that the right of ultimate decision making instills the right of unilateral action without bargaining because to hold that would effectively gut the life of the statute providing for bargaining by public employees. There are certain tradeoffs in the statutory scheme not the least of which is the lack of right to strike. Section 447.505, Florida Statutes (1977), Section 447.203(6), Florida Statutes (1977).
Commissioner Parrish, speaking for P.E.R.C. in the appealed order goes on to say:
The School Board next argues that Section 447.309(5) operates as a statutory "zipper clause," reasoning thusly: Section 447.309 states that any collective bargaining agreement "shall contain all of the terms and conditions of employment of the employees in the bargaining unit"; ergo, anything that is not in the agreement is not a term or condition of employment and, therefore, may be altered unilaterally by the public employer. Although the argument has a certain semantic charm, it must be rejected in favor of implementing the purposes of the Act.
The same policy considerations underlying the prohibition of unilateral changes during negotiations are equally applicable to unilateral changes in subjects not covered by an existing agreement. Terms and conditions not discussed by the parties in negotiations nevertheless continue to be terms and conditions of employment and, by virtue of Section 447.309(1), an employer must negotiate with the certified bargaining agent prior to changing them. The obligation to bargain imposed by Section 447.309(1), extends to all terms and conditions of employment. To conclude that terms and conditions of employment upon which the parties fail to reach agreement lose their status as such and somehow become management prerogatives leads to an absurd and fruitless result.

*732 Adoption of the School Board's argument would require a bargaining agent for employees to bargain and reach agreement on every conceivable item falling within the scope of "wages, hours, and terms and conditions of employment" or suffer immediate waiver upon the execution of an agreement. Such an interpretation would also inhibit the bargaining process by encouraging an employer to refrain from discussing bargainable subjects for fear of bringing to the attention of the employee organization a subject it might have overlooked.
Moreover, the School Board's approach ignores the realities of the bargaining process. The obligation to bargain is bilateral  the "burden" to raise bargainable subjects which it desires to change is no less on the public employer than on the employee organization. The public employer cannot refrain from raising at the bargaining table subjects which it desires to change in the hope that by so doing it will be able to unilaterally alter such subjects should the employee organization fail to secure their inclusion in an agreement. Simply stated, the bargaining table is the statutorily mandated forum for accomplishing all changes in the status quo; the sole exception being legislative action pursuant to Section 447.403(4)(d). Rarely, if ever, do negotiating parties attempt to negotiate all existing terms and conditions of employment in a single agreement. Rather, such changes are accomplished gradually with both parties ordinarily content to leave some working conditions in conformity with past practice. Furthermore, it is virtually impossible for any party to abstractly identify all existing working conditions or predict new conditions which might arise during the duration of an agreement. The approach suggested by the School Board would impede rather than facilitate the collective bargaining process and the stabilization of labor relationships.
It must also be noted that corollary to the argument advanced by the School Board is the proposition that if the only terms and conditions of employment are those contained in the collective bargaining agreement, then the employees are free to disregard any established policies or customary "terms and conditions of employment" which are not embodied in the agreement. Such conduct by employees would have the same potential for disharmony and instability of labor relationships as is occasioned by improper unilateral action by a public employer. When faced with a choice between a statutory interpretation which promises to frustrate the purposes of the Act and one which will advance such purposes, the latter must be chosen.
[We have deleted footnotes.]
We approve and adopt the well-reasoned conclusion of the commission as quoted above and otherwise affirm the order by denying certiorari.
CERTIORARI DENIED.
ANSTEAD, J., and SCHOONOVER, JACK R., Association Judge, concur.