425 So.2d 133 (1982)
PALM BEACH JUNIOR COLLEGE BOARD OF TRUSTEES, Appellant,
v.
UNITED FACULTY OF PALM BEACH JUNIOR COLLEGE, Appellee.
No. AF-17.
District Court of Appeal of Florida, First District.
December 30, 1982.
Rehearing Denied February 4, 1983.
*134 Jesse S. Hogg of Hogg, Allen, Ryce, Norton & Blue, P.A., Coral Gables, for appellant.
*135 C. Anthony Cleveland, Gen. Counsel, FEA/United, Charles F. McClamma, Staff Counsel, PERC, Tallahassee, for appellee.
ERVIN, Judge.
Appellant, Palm Beach Junior College, appeals an order of the Public Employees Relations Commission (PERC) which determined that a public employer commits an unfair labor practice by bargaining to impasse its proposal to include within a collective bargain agreement a management prerogatives clause,[1] and, after acting as a legislative body, by requiring that the clause be incorporated within the agreement. As a remedy, PERC set aside the impasse resolution action taken by the Board of Trustees in accordance with Section 447.403(4), Florida Statutes (Supp. 1980), and imposed a modified contract on the parties. Appellant urges numerous points on appeal. We affirm all, but address only one which we find merits extended consideration, urging that the employer's insistence on the clause was in conformity with a legitimate management interest, and was consistent with case law in the private sector.
Bargaining between United Faculty of Palm Beach Junior College (United Faculty) and Palm Beach Junior College Board of Trustees (Palm Beach) began on April 16, 1980. On June 10, 1980, as part of a package of bargaining proposals, Palm Beach presented to the union a management prerogatives clause, which was rejected by its bargaining representative the following week, and an impasse was declared. A mediator was selected and bargaining sessions were held at which the parties discussed but failed to agree on substitute language for the proposed clause. Among other things, United Faculty union presented the following alternatives: that the clause be withdrawn; that Palm Beach submit a list of subjects to which the waiver would apply; and that the parties bargain over such a list if the section were withdrawn until the parties engaged in negotiations for the 1981-82 contract. Palm Beach refused to withdraw its proposal, declined to formulate a list, stating that it believed it could not develop an adequate list, and responded further that it would proceed only if the matter were included in current negotiations for the 1980-81 contract year.
On August 28, 1980, a special master was appointed by PERC, and on October 10, 1980, he recommended that the proposed clause not be included within the contract. On October 30, 1980, Palm Beach proposed two alternative clauses,[2] but the parties were again unable to reach agreement. On November 19, 1980, the Board of Trustees of Palm Beach Junior College, in accordance with Section 447.403(4), Florida Statutes (Supp. 1980), and in its capacity as a legislative body, resolved the impasse by *136 mandating a contract which included the management prerogatives clause originally proposed by Palm Beach. This contract, with salary increases and other terms the parties had tentatively agreed upon during bargaining, was prepared, signed, and offered to United Faculty for a ratification vote in accordance with Section 447.403(4)(e), Florida Statutes (Supp. 1980). United Faculty declined to sign the contract or to submit it to the members for a vote; instead it filed an unfair labor practice charge with PERC.
After a public hearing, the hearing officer's recommended order found that the proposed clause was not a mandatory subject for bargaining and that Palm Beach had committed an unfair labor practice by bargaining to impasse on the clause. As a remedy, the hearing officer recommended that Palm Beach offer the contract of November 19, 1980, to United Faculty without the clause. In its conclusions of law, the Commission held, among other things, that inclusion of a management prerogatives clause
which operates as a waiver of the [employees'] statutory right to bargain over the effect or impact upon bargaining unit employees of the exercise of management rights prior to the implementation of such management rights or decisions is not a subject over which collective bargaining negotiations are required pursuant to Section 447.309(1), Florida Statutes (1979).
PERC ordered Palm Beach to rescind the action taken on November 19, 1980, and thereafter to offer United Faculty a collective bargaining agreement without the disputed clause, but with the other provisions that the parties had agreed upon during negotiations. This appeal followed.
Essentially, we are asked in this appeal whether PERC's interpretation of the Public Employees Relations Act (PERA) was in error. The standard to be applied on review of the construction of a statute that an agency is charged to enforce is ordinarily to accord substantial deference to it and decline to overturn it, except for the most cogent reasons, or unless clearly erroneous, unreasonable, or in conflict with some provision of the state's constitution or the plain intent of the statute. See King v. Seamon, 59 So.2d 859, 861 (Fla. 1952); Miami Beach First National Bank v. Dunn, 85 So.2d 556 (Fla. 1956); Green v. Stuckey's of Fanning Springs, Inc., 99 So.2d 867 (Fla. 1957); State ex rel. Biscayne Kennel Club v. Board of Business Regulation, 276 So.2d 823 (Fla. 1973); Ft. Pierce Utilities Authority v. Florida Public Service Commission, 388 So.2d 1031, 1035 (Fla. 1980); ABC Liquors, Inc. v. Department of Business Regulation, 397 So.2d 696 (Fla. 1st DCA 1981); State Department of Health and Rehabilitative Services v. Framat Realty, Inc., 407 So.2d 238 (Fla. 1st DCA 1981). As we observed in Framat Realty, Inc., 407 So.2d at 242: "[T]he judiciary must not, and we shall not, overly restrict the range of an agency's interpretative powers. Permissible interpretations of a statute must and will be sustained, though other interpretations are possible and may even seem preferable according to some views."
PERC has been provided with broad powers of administering Part II of Chapter 447 by Section 447.207, Florida Statutes (1979). We are not prepared to state on this record that PERC's interpretation of the respective statutes was clearly erroneous, unreasonable or in conflict with some provision of the constitution or the plain intent of the statutes involved. We consider that there was, under the circumstances, both competent and substantial evidence, as well as a legal foundation supporting the Commission's determination that the public employer's insistence on including the disputed clause within the agreement was an unfair labor practice.
The record reveals that on more than one occasion Palm Beach Junior College refused, in response to the union's request, to disclose a list of matters over which it proposed to exercise unilateral control. The effect of the public employer's ultimate action was to force the union to waive, prior to the implementation of any such management decision, whatever right *137 the union might otherwise have following its execution to bargain over the impact the decision could have on mandatory items of bargaining, i.e., the wages, hours, and terms and conditions of employment. See Section 447.309(1), Florida Statutes. The hearing officer amplified upon the ordinary bargaining process as follows:
In the normal course of events, bargaining takes place prior to the management decision involved, or, more properly, in anticipation of management decisions likely to be made. For example, parties may negotiate a clause in a collective bargaining agreement which is only applicable in the event of a layoff to provide an orderly procedure in the event that management decides to lay off employees. The alternative is simply to negotiate layoff at the time the decision to lay off is taken. By opposing so-called "impact" bargaining, the Respondent [employer] simply registers its preference that contingencies be dealt with before the fact, rather than afterwards. To the extent that contingencies can be anticipated and dealt with before the fact, this is entirely appropriate. But to the extent that unforeseen contingencies arise, insisting that no bargaining take place to resolve such unforeseen contingencies represents a lack of good faith in the negotiating process. In this context, impact bargaining simply provides a means of resolving disputes concerning necessary but unforeseen changes in wages, hours, terms and conditions of employment consistent with the public interest... .
The only bargaining that occurred between the parties was in essence the inclusion of the clause, or alternative clauses, in the agreement. No negotiations took place, however, as to the scope of subjects the proposed clause would encompass. The college either would not or could not provide a list of matters to which the proposed waiver clause might apply. Under the "take it or leave it attitude" evidenced by the employer, PERC correctly held that Palm Beach refused to bargain collectively in good faith with United Faculty in violation of Section 447.501(1)(c), Florida Statutes.
The public employer's insistence on including the waiver clause within the agreement, without bargaining over the effect the waiver might have on required subjects of bargaining, is somewhat analogous to the legislative mandate, provided in Sections 447.301(2) and 447.309(5), Florida Statutes (1979), that no collective bargaining agreement shall include any provision relating to retirement. In upholding the First District's decision invalidating the statutory prohibitions, our supreme court observed that the restrictions "did not simply regulate a particular aspect of collective bargaining  they prohibited it entirely. Article I, section 6, permits regulation of the bargaining process but not the abridgement thereof." City of Tallahassee v. Public Employees Relations Commission, 410 So.2d 487, 490 (Fla. 1981). Similarly, Palm Beach, through its utilization of a management prerogatives clause, has sought to do that which the legislature was forbidden to do: abridge the bargaining process.
In saying the above, we acknowledge that certain decisions must be retained exclusively by management; that there are "those management decisions which are [so] fundamental to the basic direction of a corporate enterprise or [those] which impinge [so]... indirectly upon employment security" as to require their exclusion from the area of mandatory bargaining. Fibreboard Paper Products Corp. v. National Labor Relations Board, 379 U.S. 203, 223, 85 S.Ct. 398, 410, 13 L.Ed.2d 233, 246 (1964) (Stewart, J., concurring). For example, determinations "such as choice of advertising and promotion, product type and design, and financing arrangements, have only an indirect and attenuated impact on the employment relationship." First National Maintenance Corp. v. National Labor Relations Board, 452 U.S. 666, 676-77, 101 S.Ct. 2573, 2579, 69 L.Ed.2d 318, 329 (1981). On the other hand, some decisions, "such as the order of succession of layoffs and recalls, production quotas, and work rules, are ... exclusively `an aspect of the relationship' *138 between employer and employee." Id. Our state has legislatively recognized the rights of a public employer to make decisions which are consistent with its purpose, including the rights "to direct its employees, take disciplinary action for proper cause, and relieve its employees from duty because of lack of work or for other legitimate reasons." Section 447.209, Florida Statutes.
It remains the responsibility of the Commission, subject to review by the courts, to flesh out and refine those decisions which are the exclusive prerogatives of management, and those which must be subjected to the bargaining process. Here, however, we are not presented with an issue involving simply a prerogative which is peculiar to management. We are instead confronted with the question of whether management has the right to insist on the inclusion of a clause waiving the right to bargain in advance of the implementation of a decision which could affect the required subjects of bargaining. This the public employer is quite properly forbidden to do.
We have considered the college's references to cases in the private sector, but find them distinguishable both on their facts and on the law upon which they were decided. Although we have recognized federal decisions construing the National Labor Relations Act (NLRA) as persuasive authority to the extent Chapter 447 and the NLRA are analogous, Pasco County School Board v. Florida Public Employees Relations Commission, 353 So.2d 108 (Fla. 1st DCA 1977), we must decline to follow them in those instances in which the respective acts follow divergent courses. Thus, notwithstanding the United States Supreme Court's holding in National Labor Relations Board v. American National Insurance Co., 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952), that the employer's bargaining over the inclusion of a management functions clause in a collective bargaining agreement, which would exclude certain subjects from future arbitration, was not, per se, an unfair labor practice, the facts there revealed that the clause  unlike the one before us  enumerated a limited list of matters which the employer desired to be nonarbitrable. As a result, the parties were not denied, during the course of collective bargaining, the right to bargain generally over the effect the matters enumerated in the clause might have on those conditions of employment the parties were required to bargain for collectively under the National Labor Relations Act, 49 Stat. 449 (1935), 29 U.S.C. §§ 151 et seq., as amended, 61 Stat. 136 (1947), 29 U.S.C. (Supp. IV) §§ 151 et seq.
Perhaps a more fundamental difference between the situation presented to the Court in American National Insurance Co. and that before us is that the N.L.R.A. "does not compel any agreement whatsoever between employees and employers." 343 U.S. at 402, 72 S.Ct. at 828, 96 L.Ed. at 1036. Not so PERA. Section 447.403(4)(d), Florida Statutes, permits the public employer to move a required subject of bargaining through impasse, and, in its capacity as legislative body, to "take such action as it deems to be in the public interest" in order to resolve the issue.
Other federal cases construing pertinent provisions of the NLRA are both supportive and non-supportive of the employer's position. For example, the Court has stated that a matter which is not a mandatory subject of bargaining may be raised at the bargaining table, unless it is illegal, and the parties may incorporate it into an enforceable collective bargaining agreement. National Labor Relations Board v. Wooster Division of Borg-Warner Corp., 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823 (1958). Labor and management may not, however, insist on it to the point of impasse. Id. Again, a management decision to replace existing employees with those of an independent contractor to do the same work under similar conditions of employment, in an effort to reduce labor costs, was deemed one peculiarly suitable for resolution within the collective bargaining framework. Fibreboard Paper Products Corp. v. National Labor Relations Board. More recently the Court held that a management decision to terminate a cleaning service contract with a *139 third party, caused by a dispute between management and the third party over the amount of fees, was not an unfair labor practice within the meaning of Sections 8(d) and 8(a)(5) of the National Labor Relations Act (29 U.S.C. §§ 158(d) and 158(a)(5)), despite the resulting discharge of employees, because the decision "had as its focus only the economic profitability of the contract with Greenpark [the third party], a concern ... wholly apart from the employment relationship." First National Maintenance Corp. v. National Labor Relations Board, 452 U.S. at 677, 101 S.Ct. at 2579, 69 L.Ed.2d at 329 (1981). Although the Court concluded that the management decision was not part of Section 8(d)'s "terms and conditions of employment" which the parties were required to bargain, it nevertheless observed that the union had not been certified as the bargaining agent until well after the employer's economic difficulties with its contractual party had begun; accordingly the Court was "not faced with an employer's abrogation of ongoing negotiations or an existing bargaining agreement." 452 U.S. at 688, 101 S.Ct. at 2585, 69 L.Ed.2d at 336 (e.s.). Clearly, a unilateral decision made by management during collective bargaining represents a per se refusal to bargain. National Labor Relations Board v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962).
Perhaps the major distinction between public sector law and that in the private sector is that in the latter the employee has the option to strike  a right specifically denied the public employee in Florida by Article I, section 6 of the Florida Constitution. This distinction was alluded to in First National Maintenance Corp.: "[B]oth employer and union may bargain to impasse over these matters [the matters of required bargaining] and use the economic weapons at their disposal to attempt to secure their respective aims." 452 U.S. at 675, 101 S.Ct. at 2578, 69 L.Ed.2d at 328 (e.s.).
The courts of Florida in numerous instances have noted that Section 447.309(1), Florida Statutes, requires a relatively broad scope of negotiations to help counter-balance the absence of the right to strike by public employees. For example, in School Board of Escambia County v. Public Employees Relations Commission, 350 So.2d 819, 821 (Fla. 1st DCA 1977), we observed that
the constitutional and legislative prohibitions against strikes by public employees were [n]ever intended to give public employers a power advantage over their employees in contract negotiations. Strikes are prohibited to protect the public, not to circumvent the rights of public employees to meaningful collective bargaining with their employer.
Later, in School Board of Orange County v. Palowitch, 367 So.2d 730, 731 (Fla. 4th DCA 1979), the Fourth District Court of Appeal commented:
We do not agree with the petitioner's position that the right of ultimate decision making instills the right of unilateral action without bargaining because to hold that would effectively gut the life of the statute providing for bargaining by public employees. There are certain tradeoffs in the statutory scheme not the least of which is the lack of right to strike.
On the record before it, the Commission, in our judgment, correctly determined that a provision such as Article XXII, Section C, does not itself constitute a wage, hour, term, or condition of employment within the meaning of Section 447.309(1), and therefore properly required its excision. PERC, drawing upon its expertise in the field regulated, observed that courts in other public sector jurisdictions, with laws prohibiting strikes, have broadly construed the phrase "terms and conditions of employment," in their development of a test establishing a line between the items to be bargained collectively, and the inherent rights of management. See, e.g., International Brotherhood of Teamsters Local 320 v. City of Minneapolis, 302 Minn. 410, 225 N.W.2d 254 (1975); Pennsylvania Labor Relations Board v. State College Area School District, 461 Pa. 494, 337 A.2d 262 (1975); Van Buren Public School District v. Wayne County *140 Circuit Judge, 61 Mich. App. 6, 232 N.W.2d 278 (1975).
Upon considering those decisions, as well as the applicable language in Chapter 447, PERC has concluded, rightly we believe, that the stability to be encouraged in the bargaining relationship between public employer and employee requires the parties to conduct negotiations over a broad range of subjects, and that such stability might well be disrupted if one party were to be allowed to implement unilateral management decisions prior to negotiations. We agree also with PERC's policy determination that a public sector union  unlike a bargaining unit in the private sector  faced with an employer's insistence upon the inclusion of a waiver clause such as that proposed below, has no effective lawful means to counter that insistence within our statutory scheme if the matter were brought to impasse. Because there is no statutory procedure afforded the public employee to bring pressure upon an employer to make concessions in collective bargaining, either through a strike or binding arbitration, PERC has been provided broad authority under Section 447.503, as a means of allaying a significant imbalance of bargaining power in favor of the employer. The order on review is a policy decision which PERC is well suited to make, compare City of Clearwater (Fire Department) v. Lewis, 404 So.2d 1156, 1161-62 (Fla. 2d DCA 1981), and one which we find to be neither clearly erroneous nor in conflict with a provision of either the constitution or the plain intent of the statutes involved.
AFFIRMED.
McCORD, J., concurs.
SHAW, J., dissents with opinion.
SHAW, Judge, dissenting.
It should be noted initially that the facts in this case were stipulated and are not at issue. Essentially, the facts are simply a recitation of the course of bargaining between the parties. If one assumes for the purpose of analysis that the management prerogatives clause at issue was a mandatory bargaining issue, then nothing in the course of bargaining justifies a finding that the employer committed an unfair labor practice through bad faith bargaining.[1] Thus, in our scope of review, we are not reviewing an agency's factual findings which are entitled to substantial deference under the competent substantial evidence rule. Instead, we are reviewing an agency's conclusions of law based on its interpretation of an enabling statute and case law, or, more specifically, the Public Employees Relations Commission's (PERC) interpretation of its own power to formulate labor policy for the state.
In interpreting the Public Employees Relations Act (PERA) and case law, PERC establishes two significant precedential propositions of law: it is an unfair labor practice (bad faith bargaining) for management to bargain to impasse over a management prerogatives clause; and PERC has the authority to impose a collective bargaining agreement on a party as a remedy for an unfair labor practice. In its order and its brief, PERC forthrightly supports these propositions on the ground that the constitutional prohibition against public employee strikes and the statutory impasse resolution procedure, section 447.403, Florida Statutes (Supp. 1980), create an imbalance of bargaining power between the employer and employee which PERC must redress by devising a public labor policy which balances *141 the bargaining power of public employer and employee. Under these circumstances, I disagree with the majority's position that this Court should accord substantial deference to PERC's interpretation of the statute and should decline to overturn it, except for the most cogent reasons, or unless clearly erroneous, unreasonable, or in conflict with some provision of the state's constitution or the plain intent of the statute. Alternatively, I suggest that even if substantial deference is paid to PERC's interpretation, there are cogent reasons to hold the interpretation erroneous and in conflict with the provisions and plain intent of the statute. The merits of PERC's interpretation are addressed below but, in my view, the appropriate scope of review should be that adopted by this Court in Pasco County School Board v. PERC, 353 So.2d 108 (Fla. 1st DCA 1977), and the United States Supreme Court in NLRB v. Brown, 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965). As the Brown court stated:
[W]here, as here, the review is not a question of fact, but of a judgment as to the proper balance to be struck between conflicting interests, "[t]he deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by Congress." American Ship Building Co. v. Labor Board, 380 U.S. 300 at 318, 85 S.Ct. 955 at 967, 13 L.Ed.2d 855 at 867.
Brown at 292, 85 S.Ct. at 988, 13 L.Ed.2d at 849; quoted in part, approvingly, by Pasco at 116. See also Brown at 291-292, 85 S.Ct. at 988-89, 13 L.Ed.2d at 848-849, n. 5, which recognizes the importance of full independent judicial review of the Board (NLRB) analysis even when the Board is sustained.
PERC and the majority predicate their analysis on what they perceive to be an imbalance of bargaining power between the public employer and public employee created by the constitutional prohibition against public employee strikes and the statutorily mandated impasse resolution procedure. From this perceived imbalance they draw several conclusions: (1) For public policy reasons, in order to promote harmonious public labor relations, PERC should redress the imbalance to achieve "a collective bargaining process which is as evenly balanced as possible." PERC brief at 22-23. (2) Federal private labor law, which is normally recognized as persuasive by Florida courts and which holds that bargaining to impasse over a management rights clause is not, per se, an unfair labor practice, is inappropriate here because of the non-availability of the strike weapon as a method of impasse resolution. (3) Permitting management to bargain to impasse over a management rights clause would constrict the broad range of subjects on which Florida law permits employees to bargain. (4) Employees have no lawful means to counter management's insistence on a management rights clause waiving employee rights.
I disagree with their perception of an imbalance in bargaining power and each of their conclusions. Initially, I note that if in fact there is an imbalance created by the constitution or PERA, the argument to correct it should be addressed to either the people or the legislature in the form of amendments to the constitution or to PERA. If current provisions of law fail to promote harmonious public employee labor relations, "this is an area to be addressed by the Legislature rather than by this court." City of Winter Park v. PERC, 383 So.2d 653, 655 (Fla. 5th DCA 1980).
Secondly, in analyzing the balance of bargaining power and distinguishing between federal private labor law and Florida public labor law, PERC concerned itself only with the impact of strike prohibition and impasse resolution. Within this narrow scope of inquiry, one could conclude that public employees are disadvantaged vis-a-vis private employees. However, a comprehensive appraisal should include an analysis of other pertinent distinctions and trade-offs between public and private employments such as the private employer's use of the lockout, the temporary layoff of employees, the transfer of work, and the liquidation of the business to counter the strike threat and *142 resolve the impasse; and the various constitutional, statutory, and civil service rights enjoyed by public but not private employees.[2] The distinction between public and private labor confers advantages and disadvantages on both the employer and employee. One might argue the balance of the equation created by the constitution, pertinent statutes, and case law in either direction, but PERC's narrow and incomplete analysis is unpersuasive.
Thirdly, the collective bargaining rights of public employees have been given an expansive reading by this and other courts. See, for example, City of Tallahassee v. PERC, 393 So.2d 1147 (Fla. 1st DCA 1981), affirmed, 410 So.2d 487 (Fla. 1982), which held that the constitutional right of public employees to bargain on terms and conditions of employment may not be statutorily abridged; School Board of Orange County v. Palowitch, 367 So.2d 730 (Fla. 4th DCA 1979), holding that a public employer may not make unilateral changes in terms and conditions of employment not covered by an existing agreement but must negotiate with the certified bargaining agent prior to changing them; and School Board of Indian River County v. Indian River County Education Association, Local 3617, 373 So.2d 412 (Fla. 4th DCA 1979), holding that management's obligation to bargain extends even to a de minimis change of no great moment. Harmony requires that both parties be content with the bargaining agenda and the contract arising therefrom. If collective bargaining and compliance with the contracts arising therefrom are to be harmonious, PERC and the courts should be concerned that they give an equally expansive reading to the collective bargaining rights of management. The agenda should not be restricted to bargaining over issues either raised by the union or accepted at the sufferance of the union. Further, harmony is promoted by anticipatorily raising and agreeing, or disagreeing, on such rights when the master contract is being negotiated; management should be encouraged to raise these issues during these negotiations, not penalized for doing so. It is irrational and counterproductive to exclude such issues from collective bargaining on the master contract and to deal with them on an ad hoc basis as they arise. To do so thwarts the public interest in efficient management of government resources and furnishes a seed bed for continuing labor/management disharmony.
In National Labor Relations Board v. American National Insurance Co., 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952), the NLRB had held that it was a per se violation of the National Labor Relations Act (NLRA) for an employer to bargain to impasse over a management functions clause and prohibited the employer from bargaining over any management functions clause covering a condition of employment. In rejecting the NLRB holding, the Supreme Court noted that such clauses were not unlawful; that bargaining for management function clauses was common collective bargaining practice; and that Congress had provided expressly that the NLRB was not to pass upon the desirability of the substantive terms of labor agreements, but was to leave such matters to the bargaining table. Finally, the NLRB fear that use of such management function clauses would lead to evasion of the employer's duty to bargain did not justify the NLRB's prohibition of all bargaining on such clauses or its holding that such bargaining was a per se violation of the NLRA. This is much the wiser approach to collective bargaining, whether private or public, than that adopted here by the majority. PERC has made no persuasive showing that the rationale for the American National holding is not equally applicable to public labor law, and this Court should adopt the holding as its own.
Finally, and most significantly, the concern of PERC and the majority that bargaining to impasse over a management rights clause will restrict the employees' right to bargain because employees have no *143 lawful means to counter management's insistence on a waiver of employee rights is simply misplaced. First, the employee's bargaining rights are well established; bargaining to impasse neither reduces nor expands these rights. Here, the union itself declared the impasse and there is nothing in the record to suggest, nor does any party argue, that the employees' right to make any proposal they wished was abridged. Second, the employees' lawful means to counter management's insistence on a waiver of employee rights is quite simple: they can say no. In City of Tallahassee this Court held that a "legislative enactment removing retirement as a subject of collective bargaining for public employees abridges or curtails that right and, therefore, violates Article I, Section 6, of the Florida Constitution." Id. at 1150. In response to an argument by amicus curiae that the elimination of retirement from collective bargaining was necessary in order to protect the actuarial soundness of the public pension funds as required by the constitution, our response was that collective bargaining does not require agreement to an actuarially unsound benefit; management can simply say no. This Court further noted that section 447.309(3), Florida Statutes provides:
If any provision of a collective bargaining agreement is in conflict with any law, ordinance, rule, or regulation over which the chief executive officer has no amendatory power, the chief executive officer shall submit to the appropriate governmental body having amendatory power a proposed amendment to such law, ordinance, rule, or regulation. Unless and until such amendment is enacted or adopted and becomes effective, the conflicting provision of the collective bargaining agreement shall not become effective.
Id. at 1151. Although City of Tallahassee is factually off point, it presents a legal issue similar to that in the present case: Can the legislative body of Palm Beach Junior College, acting pursuant to section 447.403, mandate the inclusion in a collective bargaining agreement of a provision waiving public employee rights to bargain collectively over wages, hours, terms, and conditions of employment? The parties and the majority assume that the answer is yes. On the authority of City of Tallahassee, which holds that a legislature cannot abridge the public employees' constitutional rights to collective bargaining, my answer is no. My answer is further supported by the language of section 447.403(4)(e) which recognizes that there are impasse issues which cannot be mandated:
If such agreement is not ratified by all parties, pursuant to the provisions of s. 447.309, the legislative body's action taken pursuant to the provisions of paragraph (d) shall take effect as of the date of such legislative body's action for the remainder of the first fiscal year which was the subject of negotiations; however, the legislative body's action shall not take effect with respect to those disputed impasse issues which establish the language of contractual provisions which could have no effect in the absence of a ratified agreement, including, but not limited to, preambles, recognition clauses, and duration clauses. (emphasis supplied)
To construe section 447.403 as granting the authority to curtail or abridge the bargaining rights of public employees is to say that the Florida Legislature can grant authority which it does not itself possess under the constitution. Accordingly, I would hold that the management prerogatives clause in issue is a nullity in that it exceeds the statutory authority granted to the legislative body of the college: only the employees may waive their constitutional and statutory rights to bargain collectively over wages, hours, terms and conditions of employment by ratifying an agreement pursuant to section 447.309; the public employer may not mandate such a waiver pursuant to section 447.403.
The disposition of the case on this ground has several advantages which the majority decision does not provide. First, it does not restrict the right of the public employer to propose and bargain for management rights. Second, it respects well-settled and *144 persuasive federal case law. Third, it respects the right and burden of both parties to bargain with each other without risking or invoking a premature intervention by PERC. Fourth, it provides fuller protection to the employees' collective bargaining rights than does the PERC order. The PERC finding of bad faith bargaining appears to assume that if management had forthrightly made a more specific waiver proposal there would have been no unfair labor practice. If this assumption were true, the logic of the PERC analysis would permit the legislative body of the public employer to mandate a specific, but not a general, waiver of employee bargaining rights. Thus, under other circumstances, the unfair labor practice approach would not prevent an abridgement of the employees' bargaining rights.
Finally, in grounding its disposition on a finding of an unfair labor practice, PERC did not limit its remedy to holding that the management rights clause could not be bargained to impasse. Instead, PERC ordered the College's Board of Trustees to rescind its action resolving the bargaining impasse and to offer the union an agreement including all provisions agreed to by the parties in negotiations and those mandated by the Board of Trustees, excluding the management prerogatives clause in issue. The PERC notion that preliminary negotiations and tentative agreement on individual terms of a contract, absent final agreement, create a complete contract is contrary to well settled contract law. See 11 Fla. Jur.2d, Contracts, §§ 10-13. More seriously, in establishing the precedent that PERC's power to remedy an unfair labor practice includes the power to dictate the substantive terms of a contract to a party, PERC is acting ultra vires. Nothing in PERA even suggests that PERC has the authority to act as an Interest Arbitrator; indeed the legislative decision to vest the authority for impasse resolution in the legislative body of the public employer suggests the contrary. The legislature could have tasked PERC with the responsibility and authority under section 447.403 to act as an Interest Arbitrator in resolving bargaining impasses; it chose not to do so. PERC's assumption of that role in the guise of policy making is contrary to statute and case law. See H.K. Porter Co. v. NLRB, 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970), where the court faced this very issue and reversed the NLRB's imposition of a dues check-off on an employer, holding that, "while the Board does have power ... to require employers and employees to negotiate, it is without power to compel a company or a union to agree to any substantive contractual provision of a collective-bargaining agreement." Id. at U.S. 102, L.Ed.2d 150.
In sum, I agree with PERC and the majority that a public employer cannot be permitted to bargain to impasse over a proposed waiver of employee rights on the founded expectation that the proposed waiver may be mandated during the impasse resolution stage. I am convinced, however, that section 447.403 does not in specific terms authorize the legislative body of the public employer to mandate such a waiver and, further, assuming arguendo that the statute did authorize such action, the statute, or portion thereof, would be unconstitutional. See City of Tallahassee. I appreciate that this case appears to present an issue of first impression, but, in my view, PERC has misperceived the nature of the problem, misconstrued the applicable law, and, consequently, devised new law which not only does not adequately address the true problem, but which, as a side effect, creates serious future problems.
I am also concerned over what I regard as PERC's unduly expansive view of its role in formulating public labor policy and this Court's acquiesence under the rubric of judicial deference to agency expertise. Though it may offend theoreticians, we need to understand and accept that contemporary government agencies are not entirely neutral and disinterested arbitrators of the conflicting interests of others. Government agencies have an activist role, functions to perform, and human and institutional interests of their own which are inconsistent with those of the neutral and *145 disinterested magistrate. PERC, for example, is appearing here as a party with full advocacy rights. In the scale of judicial values, deference to agency expertise is an aid to judicial review and a self-imposed restraint against the judicial arrogation of executive and legislative powers; equality before the law is a fundamental precept imposed on the judiciary by our federal and state constitutions. Ritualistic judicial deference to an agency's interpretation of its statutory power risks abdication of the role of the judiciary. As John Marshall put it:
It is emphatically the province and duty of the judicial department to say what the law is.
Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60, 73 (1803).
NOTES
[1] The clause, Article XXII, Section C, provides:

Whenever the Employer exercises a right to [or] privilege contractually reserved to it or retained by it, the Employer shall not be obliged to bargain collectively with respect to the effect or impact of that exercise on individual unit members or on the unit as a group, or to postpone or delay effectuation or implementation of the management decision involved for any reason other than an express limitation contained in this Agreement.
[2] The first alternative clause proposed the following:

It is clearly and unmistakably understood by the parties hereto, and agreed, that the reservation or retention of a right, or the existence of a right, under this Article or emanating from some other source, within or independent of this Agreement, comprehends, includes and encompasses the authority, without further bargaining, to act and implement, as well as the rights to engage in decision making. It is assumed that decisions lawfully arrived at and which are contractually proper will be so implemented, and questions as to the effects or impacts of such implementations and consequential actions shall not be subject for mandatory bargaining during the term of the Agreement.
The parties also agree, however, to meet and confer, at the request of either, although not to bargain in the legal sense, as to such impacts or effects.
The second proposal stated:
The right to take unilateral action refers to all rights described in Section A, and is not qualified by or subject to any duty to bargain over the effects or impacts of actions taken or of consequential, reasonable changes in terms or conditions of employment made in consonance with such actions.
[1] To the contrary, three actions of the union leadership suggest that the union may have bargained in bad faith: by declining to comment on the management prerogatives clause when first proposed and declaring an impasse without offering any counterproposal; by not responding to the alternative management proposals of 30 October 1980, which contained language indicating management was moving toward more restrictive or specific delineation of the scope of the clause; and by not submitting the legislatively-mandated contract to the union membership for ratification or rejection as they were required to do by section 447.403, Florida Statutes (Supp. 1980). See City of Orlando v. Int'l Ass'n of Fire Fighters, Local 1365, 384 So.2d 941 (Fla. 5th DCA 1980), which held that it was an unfair labor practice to delay the resolution of a bargaining impasse.
[2] See American Ship Bldg. Co. v. NLRB, 380 U.S. 300, 85 S.Ct. 955, 13 L.Ed.2d 855 (1965); NLRB v. Brown, 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965); and The Florida Bar, Collective bargaining for public employees in Florida  in need of a popular vote?, October, 1982.