BENTON, C.J.
Four labor unions representing employees of the City of Gainesville appeal a final order of the Public Employees Relations Commission (PERC) that rejected Hearing Officer Choppin’s ruling that the City had engaged in unfair labor practices, in violation of sections 447.501(l)(a) and (c), Florida Statutes (2008), by refusing to bargain over changes it made to health insurance benefits for city employees, once they retire. The parties’ collective bargaining agreements did not address the issue, so it was incumbent on the appellants to show that the City’s furnishing retirees’ health benefits amounted to an established past practice. Persuaded the hearing officer got it right, we reverse and remand to PERC for further proceedings.
The parties’ collective bargaining agreements do not discuss health insurance benefits for retirees. But the City has helped pay for such benefits for many years. In fact, until 1995 the City paid 100% of retirees’ health insurance premiums (for individual coverage) including all premium increases occurring after retirement. The City reduced the percentage in 1995, but continued to pay a fixed percentage of retirees’ insurance premiums, including the same fixed percentage of premium increases occurring after retirement.
 The City effected the change in 1995 by adopting a city ordinance incorpo *1072 rating the formula. Gainesville, Fla., Ordinance 4066 (Mar. 27, 1995). While the 1995 change the ordinance represented was not the product of collective bargaining, the unions waived no collective bargaining rights going forward by acquiescing in the change.[1]
*1073 The ordinance, and the formula it embodied, remained unchanged until 2008, when the City adopted a superseding ordinance, again changing its method of contributing to retirees’ health benefits, this time by underwriting health insurance premiums up to a set dollar amount (rather than paying a percentage of the premiums). The 2008 change, which shifts to retirees the full amount (not merely a percentage) of any increase in premiums occurring in retirement, gave rise to the present controversy, and to unfair labor practice charges, because the City refused to bargain over the change.
When the unions filed unfair labor practice charges under sections 447.501(l)(a) and (c), Florida Statutes (2008), alleging the City’s refusal to bargain, a PERC hearing officer conducted an evidentiary hearing. Eventually, the hearing officer recommended that PERC find that the City had engaged in an unfair labor practice by unilaterally changing the health insurance benefits employees would receive as retirees, without negotiating the changes with the unions. PERC rejected the hearing officer’s recommendation, however, and dismissed the unfair labor practice charges. The unions then brought the present appeal.
Like PERC itself, we are “bound to honor a hearing officer’s findings of fact unless they are not supported by competent, substantial evidence.” City of Winter Springs v. Winter Springs Prof'l, 885 So.2d 494, 497 (Fla. 1st DCA 2004) (citing Belleau, v. Dep’t of Envtl. Prot., 695 So.2d 1305, 1307 (Fla. 1st DCA 1997)). In reviewing PERC’s decisions, moreover, we must not lose sight of the fact that public employees have a constitutional right to bargain collectively. Art. I, § 6, Fla. Const. (“The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged.”). The Florida Supreme Court has made it clear that “ ‘with the exception of the right to strike, public employees have the same rights of collective bargaining as are granted private employees by Section 6 [of Article 1 of the Florida Constitution].’ ” City of Tallahassee v. Pub. Emps. Relations Comm’n, 410 So.2d 487, 490 (Fla.1981) (quoting Dade Cnty. Classroom Teachers’ Ass’n, Inc. v. Ryan, 225 So.2d 903, 905 (Fla.1969)). See also Chiles v. State Emps. Attorneys Guild, 734 So.2d 1030, 1036 (Fla.1999) (Article 1, section 6 of the Florida Constitution “expressly applies to ‘employees’ without limitation, except that public employees do not have the right to strike.”).
Implementing this constitutional right, the Public Employees Relations Act, Chapter 447, Part II (PERA), provides:
The public policy of this state, and the purpose of this part, is to provide statutory implementation of s. 6, Art. 1 of the State Constitution, with respect to public employees ... This state’s public policy is best effectuated by ... [Requiring the state, local governments, and other political subdivisions to negotiate with bargaining agents duly certified to represent public employees.
*1074 § 447.201, Fla. Stat. (2008). Section 447.309(1), Florida Statutes (2008), requires a public employer to bargain collectively the wages, hours, and other terms and conditions of employment for employees in each certified bargaining unit.[2]
Job-related benefits, although not catalogued in an existing bargaining agreement, may nevertheless constitute terms and conditions of employment which are not subject to change by the employer unilaterally. See Palowitch v. Orange Cnty. Sch. Bd., 3 F.P.E.R. 280 at 282 (1977), approved 367 So.2d 730 (Fla. 4th DCA 1979). “It is settled law that a public employer’s unilateral alteration of the status quo of a mandatory subject of bargaining, i.e., wages, hours, and terms and conditions of employment of its employees, is a per se violation of Section 447.501(1)(a) and (c), Florida Statutes, absent a clear and unmistakable waiver, legislative body action taken after impasse, or extraordinary circumstances requiring immediate action.” Miami Beach Fraternal Order of Police. William Nichols Lodge No. 8 v. City of Miami Beach, 36 F.P.E.R. 127 at 275-76 (2010). The status quo depends both on the provisions of collective bargaining agreements and on the content of established past practices. At issue here is the City’s allegedly established past practice of defraying a percentage of municipal employees’ health insurance premiums upon retirement.
Like private employees,[3] public employees have the right to bargain for changes to established past practices, even though they are not mentioned in collective bargaining agreements. See Sch. Bd. of Orange Cnty. v. Palowitch, 367 So.2d 730, 731 (Fla. 4th DCA 1979) (school board’s unilateral increase of length of work year, as established by past practice, was a per se violation). In Palowitch, the Fourth District adopted PERC’s order, which explained:
The same policy considerations underlying the prohibition of unilateral changes during negotiations are equally applicable to unilateral changes in subjects not covered by an existing agreement. Terns and conditions not discussed by the parties in negotiations nevertheless continue to be terms and conditions of employment and, by virtue of Section ¼7.309(1), an employer must negotiate with the certified bargaining agent prior to changing them. The obligation to bargain imposed by Section 447.309(1), extends to all terms and conditions of employment. To conclude that terms and conditions of employment upon which the parties fail to reach agreement lose their status as such and somehow become management *1075 prerogatives leads to an absurd and fruitless result.
Adoption of the School Board’s argument would require a bargaining agent for employees to bargain and reach agreement on every conceivable item falling within the scope of “wages, hours, and terms and conditions of employment” or suffer immediate waiver upon the execution of an agreement.
Palowitch, 367 So.2d at 731-32 (emphasis supplied). Public employees’ right to bargain for changes to established past practices includes the right to bargain for changes to the employer’s contribution to current employees’ health care premiums upon retirement[4] where the union contract is silent on this issue. See Hillsborough Cnty. Police Benevolent Ass’ n, Inc. v. City of New Port Richey, 12 F.P.E.R. 17040 at 61 (1985).
In City of New Port Richey, PERC held that the city had committed an unfair labor practice, in violation of §§ 447.501(l)(a) and (c), by amending its ordinance to reduce its required contribution to the retirement fund where the city’s contribution had been established by ordinance for four years and the union contract was silent on the matter. PERC explained that:
an employer’s unilateral alteration of terms and conditions of employment established by past practice will give rise to an unfair labor practice when it is established that the past practice had been unequivocal, had existed substantially unvaried for a significant period of time prior to the change, and could reasonably have been expected by the employees to have continued unchanged.
Id. PERC went on to say that “... the City’s rate and ratio of contribution to the pension fund had, through past practice [four years], ripened into an extra-contractual term and condition of employment which was unilaterally changed by the City.” Id. Surprisingly, PERC made no mention of its decision in City of New Port Richey in the order under review.
The formula under which the City made its contribution toward retirees’ health insurance premiums in the present case remained in effect from 1995 to 2008. “To constitute an established practice, it must be demonstrated that the practice was unequivocal, that it existed substantially unvaried for a significant period of time, and that the bargaining unit employees could reasonably have expected the practice to continue unchanged.” Clay Educ. Staff Prof l Ass’n v. Sch. Dist. of Clay Cnty., 34 F.P.E.R. 139 at 275 (2008) (citing Hillsborough Cnty. Police Benevolent Ass’n, Inc. v. City of Tampa, 15 F.P.E.R. 20028 (1988); Manatee Educ. Ass’n v. Manatee Cnty. Sch. Bd., 7 F.P.E.R. 12017 (1980)). The hearing officer found as a fact that appellants’ members reasonably expected the City’s contri *1076 butions to the health insurance premiums that they would pay when they retired would continue, based in no small part on the length of time that the formula for the City’s contributions had already remained in place.
This finding of fact has ample support in the evidence, and should not have been overturned. See Green v. Fla. Dep’t of Bus. & Prof'l Regulation, 49 So.3d 315, 318-19 (Fla. 1st DCA 2010) (determining that ALJ’s determinations that an appraisal report was not misleading or insufficient were factual findings, “susceptible to ordinary methods of proof and, thus, the Board was not permitted to reject these findings unless they were not supported by competent substantial evidence”); City of Winter Springs, 885 So.2d at 497 (“Agencies are bound to honor a hearing officer’s findings of fact unless they are not supported by competent, substantial evidence.” (citing Belleau, 695 So.2d at 1307)). PERC has in the past found that practices lasting much shorter periods of time gave public employees sufficient reason to expect the practice to persist. For example, in City of New Port Richey, PERC found that the city committed an unfair labor practice when it unilaterally reduced its contribution to a pension plan. PERC found that New Port Richey’s employees could reasonably have expected the practice to remain unchanged where the city’s rate of contribution to the plan had lasted from 1981 to 1985, or, as PERC said, “remained substantially unvaried for an extended period of time.” 12 F.P.E.R. 17040 at 61. There the contribution rates and ratios remained unchanged for a period of four years, while the period here lasted thirteen years.
PERC has, indeed, held that such a past practice can develop over the course of only two years. See Cent. Fla. Prof'l Firefighters, Local 2057 v. Bd. of Cnty. Comm’rs of Orange Cnty., 9 F.P.E.R. 14372 at 775-76 (1983) (employees had reasonable expectation that June 1, 1981 to May 2, 1983 practice allowing firefighters to leave the station to purchase food and eat at restaurants would continue). An agency’s interpretation of a statute it is charged with administering is normally entitled to judicial deference. But
“[a]n agency’s construction of a statute is not entitled to deference where the agency has erroneously interpreted a provision of law.” PERC must itself comply with statutes it administers that are intended to implement state constitutional provisions forbidding the abridgment of public employees’ collective bargaining rights. See Art. I, § 6, Fla. Const.
United Faculty of Fla. v. Pub. Emps. Relations Comm’n, 898 So.2d 96, 100-01 (Fla. 1st DCA 2005) (quoting City of Safety Harbor v. Commc’ns Workers of Am., 715 So.2d 265, 266 (Fla. 1st DCA 1998)) (reversing PERCs dismissal of unfair labor practice charges). Deference is particularly inappropriate where, as here, PERC has suddenly changed its interpretation of a statute with little or no explanation. See Fla. Cities Water Co. v. State, 705 So.2d 620, 625-26 (Fla. 1st DCA 1998); cf. Smith v. Crawford, 645 So.2d 513, 521 (Fla. 1st DCA 1994) (“Deference to an agency’s interpretation is even more compelling where an agency’s interpretation, as here, is consistent with its prior published opinions.”). The unequivocal past practice in the present case remained in place over the course of thirteen years, and was clearly well established, as the hearing officer found.
An employer’s unratified reservation of rights, whether in a retirement plan or in other documents not expressly incorporated into the collective bargaining agreement, does not abridge employees’ right to bargain collectively. See S. Nude- *1077 ar Operating Co. v. NLRB, 524 F.3d 1350 (D.C.Cir.2008); Midwest Power Systems, Inc., 335 NLRB 237, 238 (2001). Where the employer is a city, a municipal ordinance cannot abridge public employees’ constitutional and statutory rights[5] to bargain collectively over past practices. See City of New Port Richey, 12 F.P.E.R. 17040 at 61. As explained by the Florida Supreme Court:
Municipal ordinances are inferior in stature and subordinate to the laws of the state. Accordingly, an ordinance must not conflict with any controlling provision of a state statute, and if any doubt exists as to the extent of a power attempted to be exercised which may affect the operation of a state statute, the doubt is to be resolved against the ordinance and in favor of the statute. A municipality cannot forbid what the legislature has expressly licensed, authorized or required, nor may it authorize what the legislature has expressly forbidden. In order for a municipal ordinance to prohibit that which is allowed by the general laws of the state there must be an express legislative grant by the state to the municipality authorizing such prohibition.
Rinzler v. Carson, 262 So.2d 661, 668 (Fla. 1972) (citations omitted). An employer’s published claim that it has retained the right to change a past practice without bargaining, does not give the employer the legal right to make the unbargained for change. See Pasco Cnty. Prof'l Firefighters, Local 4420, IAFF v. Pasco Cnty. Bd. *1078 of Cnty. Comm’rs, 33 F.P.E.R. 225 (2007) (holding annual wage increase following a wage study was an established past practice subject to collective bargaining despite the county’s inherent discretion not to follow wage study recommendations).[6]
The key is the parties’ reasonable expectation that a past practice will continue. See Seminole Cnty. Prof'l Firefighters, Local 3251 v. Seminole Cnty., 31 F.P.E.R. 197 at 457-58 (2005) (finding employees had a reasonable expectation that the practice of providing take-home vehicles would continue despite the County’s generally unknown and amorphous policy that allowed County to eliminate take-home vehicles upon an annual review); Daytona Beach Fire/Rescue, Local 1162 v. City of Daytona Beach, 19 F.P.E.R. 24068 at 138—39 (1993), aff'd., 630 So.2d 194 (Fla. 5th DCA 1993) (holding an annual wage increase was a past practice despite City’s discretion); Fla. Nurses Ass’n v. Pub. Health Trust-Metro. Dade Cnty., 14 F.P.E.R. 19312 at 700-06 (1988) (finding employees whose collective bargaining agreement did not contain express provision regarding employer’s contribution to employee health insurance premium had a reasonable expectation that employer’s nine-year practice of subsidizing the cost of certain HMO family coverage would continue, notwithstanding this statement in the employer’s insurance booklet: “You ... must pay the cost of your family’s coverage”). The past practice in the present case was substantially unvaried for more than a decade. The hearing officer understandably found that the parties expected it to continue. PERC erred in overturning the hearing officer’s recommendation to treat the City’s unilateral change of this established past practice as an unfair labor practice.
Reversed and remanded.
THOMAS, J., concurs; DAVIS, J., Dissents With Opinion.

. In similar circumstances, the court in Southern Nuclear Operating Co. v. NLRB, 524 F.3d 1350 (D.C.Cir.2008), ruled that the unions there did not waive their rights to bargain collectively for modifications in 2000 simply because they had not negotiated other changes that had been implemented in 1995, explaining:
The unions’ conduct pertaining to the 1995 modifications has no bearing on their right to bargain over the 2000 changes. The two episodes were separate and independent events. The Companies made changes to the OPRBs [other post retirement benefits] in 1995; then in 2000, they made another round of modifications. Certainly, nothing in the history of the 1995 changes suggests the unions consciously explored or fully discussed the 2000 changes and then voluntarily relinquished their right to bargain over them. The fact that the unions may have waived their bargaining rights in 1995 — an issue we need not address — does not undermine their bargaining rights in 2000. As the Board has long held, "[i]t is well settled that even past failure to assert a statutory right does not estop subsequent assertion of that right.”
Id. at 1358 (emphasis supplied) (citation omitted). In the present case, the 1995 change to a percentage contribution less than 100% was separate and distinct from the change made in 2008, abandoning any percentage formula.
While IAFF Local 2157 initially demanded to bargain the 1995 change, it and the other unions later acquiesced in the change. In doing so, however, the unions did not relinquish the right to bargain future changes. ”[T]he burden of proving waiver by a preponderance of the evidence is on the City, which must show that the waiver was clear and unmistakable." Hillsborough Cnty. Police Benevolent Ass’n, Inc. v. City of New Port Richey, 12 F.P.E.R. 17040 at 61 (1985). As explained in Southern Nuclear Operating Company:
"A waiver occurs when a union knowingly and voluntarily relinquishes its right to bargain about a matter.... [W]hen a union waives its right to bargain about a particular matter, it surrenders the opportunity to create a set of contractual rules that bind the employer, and instead cedes full discretion to the employer on that matter. For that reason, the courts require ‘clear and unmistakable' evidence of waiver and have tended to construe waivers narrowly.”
524 F.3d at 1357 (quoting Dep’t of the Navy, Marine Corps Logistics Base v. FLRA, 962 F.2d 48, 57 (D.C.Cir.1992)). The unions in the present case did not waive their right to bargain based on their acquiescence or agreement to changes to retiree health insurance benefits in 1995. The prefatory language of the 1995 ordinance (“Whereas, the City Commission of the City of Gainesville, Florida, has in the past chosen to pay some of the premium costs for continued health insurance coverage for retirees and/or their dependents, the percentage or amount of which payment for either the retirees or dependent coverage has varied over the years and may continue to do so in the future ....”) does not alter this fact.
PERC has repeatedly recognized this principle. See Royal Palm Beach Prof l Fire Fighters Ass’n, IAFF, Local 2886 v. Vill. of Royal Palm Beach, 14 F.P.E.R. 19304 (1988) (employer's unilateral change to work schedule on November 19, 1987 was an unfair labor practice despite the union’s failure to object to prior changes in July 1985 and October 1986); United Faculty of Fla. v. Univ. of Cent. Fla. Bd. of Tr. 30 F.P.E.R. 229 (2004) (holding that, although UFF waived right to bargain over out-of-cycle wage increases paid for first six weeks, Board committed an unfair labor practice when it continued to grant out-of-cycle wage increases after UFF notified the Board that it desired to negotiate over the increases); Fire Fighters of Boca Raton, Local 1560 v. City of Boca Raton, 12 F.P.E.R. 17051 (1986) (union did not waive right to contest change to city’s rules and regulations even though it had not objected to other recent changes); Escambia Educ. Ass’ n, FTP-NEA v. Sch. Bd. of Escambia Cnty., 10 F.P.E.R. 15160 (1984) (that the employee organization in prior years did not assert its contractual or status quo right to receive salary experience increments held not to waive its right to challenge School Board’s unilateral discontinuance of payment of salary experience increments for current year).
Nor did the unions waive their rights to bargain changes to the City's past practice formula by not objecting to the ordinances, summary plan descriptions and plan descriptions containing or referring to the reservation of rights language. The unions never *1073 "consciously explored” or "fully discussed” the City's reservation of rights language with the City. See S. Nuclear Operating Co. 524 F.3d at 1357-58; see also Ga. Power Co., 325 N.L.R.B. 420, 421 (1998), aff'd without opinion, 176 F.3d 494 (11th Cir.1999) (finding no waiver where the contract did not refer to medical or life insurance benefits and the reservation of rights language in the benefit plans was never the subject of collective bargaining). Whatever the effect of the City’s reservation of rights language on its non-unionized employees and retirees, it did not affect the rights of employees represented by the unions. City Attorney Hauck and various City documents recognized that any changes that might occur remained subject to the City’s collective bargaining obligations.

. A public employer's refusal to bargain violates §§ 447.501(l)(a) and (c), Florida Statutes (2008), which prohibit employers from "[i]nterfering with, restraining, or coercing public employees in the exercise of any rights guaranteed them under this part” and "[Refusing to bargain collectively ... with the certified bargaining agent for the public employees in the bargaining unit.”

. Specifically, public employees have the right to bargain over retirement matters including the employer’s contribution to current employees’ health care premiums upon retirement. See City of Tallahassee v. Pub. Emps. Relations Comm'n, 410 So.2d 487, 491 (Fla. 1981) ("Retirement benefits have become an important and integral part of employment agreements.... [Retirement provisions are necessarily a part of the collective bargaining process ...”); Leon Cnty. Police Benevolent Ass’n, Inc. v. City of Tallahassee, 8 F.P.E.R. 13400 at 724 (1982), aff’d. 445 So.2d 604 (Fla. 1st DCA 1984) ("a public employer’s payment of insurance premiums has been consistently held to be a term and condition of employment subject to negotiations”); City of New Port Richey, 12 F.P.E.R. 17040 at 60 ("In light of our precedent requiring a broad scope of negotiations, it is appropriate to consider the various aspects of a retirement plan such as the vesting schedule, the procedure for claim filing and the plan administration as well as obvious emoluments of value like benefits and contributions as falling within the definition of terms and conditions of employment.”).

. In City of New Port Richey, the Commission held that the City violated Sections 447.501(l)(a) and (c) by amending the city ordinance and thereby unilaterally altering the City’s rate of contribution to the pension fund. There, neither the general management rights clause nor the zipper clause clearly and unmistakably waived the union's right to bargain. 12 F.P.E.R. 17040 at 62-63.
The zipper clause stated: “All terms and conditions of employment not covered by this agreement shall continue to be subject to the City’s sole discretion and control.” Id. at 63. PERC stated that "[bjecause zipper clauses are generally interpreted as closing out bargaining during the contract term and maintaining the status quo of a contract, they are not to be used to allow an employer to make unilateral changes in working conditions without bargaining.” Id. PERC explained:
to infer a waiver from a provision that is ostensibly and preeminently a "zipper clause,” the operative language must not only contain a significant quantum of specificity as to the subject matter of the purported waiver, which we do not encounter here, but it must also include wording that expressly delineates a yielding of the right to negotiate with respect to changes in the subject terms or conditions of employment. The fact that Section 3 of Article 26 provides that the City shall possess sole discretion and control over conditions of employment not covered by the collective bargaining agreement does not persuade us that the PBA thereby explicitly waived its right to bargain over changes in the rates of contribution to the pension fund.
Id. (emphasis supplied). As in City of New Port Richey, the "Entire Agreement” zipper clause here is general and does not specifically and explicitly waive the Unions’ right to bargain changes to the City’s contribution for retiree health insurance premium payments. There is no clear and unmistakable waiver.
The zipper clauses in the present case do not waive the unions’ bargaining rights. " 'A waiver of this type [contractual] must be stated with such precision that simply by reading the pertinent contract provision employees will be reasonably alerted that the employer has the power to change certain terms and conditions of employment unilaterally.’ ” Int’l Assn of Fire Fighters, Local 754 v. City of Tampa, 13 F.P.E.R. 18129 at 317 (1987) (quoting Fraternal Order of Police Miami Lodge 20 v. City of Miami, 12 F.P.E.R. 17029 at 40 (1985)). Neither broadly worded zipper clause nor management rights clause constitute a clear and unmistakable waiver of the right to bargain. See Pinellas Cnty. Police Benevolent Ass’ n, Inc. v. City of Dunedin, 8 F.P.E.R. 13102 (1982) (zipper clause and management rights clause did not waive union's right to bargain over employer’s increased health insurance payroll deductions).

. In Southern Nuclear Operating Company, the employers (subsidiaries of an electric utility) unsuccessfully appealed the decision by the NLRB that they unlawfully changed the employees’ retiree healthcare and life insurance benefits without bargaining. Benefit-plan guides which described the healthcare and life insurance benefits were provided to the employees and unions. Some of these guides had a reservation of rights clause that granted the employer the right to "terminate or amend this Plan in whole or in part, including but not limited to any Benefit Option described herein, at any time so long as any participant is reimbursed for any covered expenses already incurred under this Plan.” 524 F.3d at 1355.