UPCHURCH, Judge.
This is an appeal from an order of the Florida Public Employees Relations Commission (PERC) which found appellant, the City of Winter Park, guilty of an unfair labor practice against appellee, Laborers’ International Union of North America, Local # 517.
We REVERSE.
This appeal essentially involves a single question, whether PERC erred in concluding that in the absence of ratification by all parties, upon demand, a public employer was required to enter collective bargaining after resolution of a bargaining impasse by legislative action.
Appellant, the City of Winter Park, and appellee, Laborers’ International Union of North America, Local # 517, had engaged in collective bargaining in an attempt to reach a contract to cover the fiscal years 1976-1977 and 1977-1978. The parties were unable to agree on several items, one of which was the duration of the agreement. A bargaining impasse was declared which was ultimately resolved by “legislative action” under applicable procedures of section 447.403, Florida Statutes (1977). The procedure followed has not been questioned. The agreement under the statutory impasse procedure was ratified and approved by the City Commission on December 3, 1976; thereafter, the Union refused to ratify and rejected the entire agreement. In June of 1977, the Union demanded that the City enter into bargaining for a new agreement for the next succeeding year, 1977-78.
On August 16, 1977, General Counsel for PERC issued a complaint alleging that the City, by refusing to bargain, interferred with, restrained, and coerced employees in the exercise of rights under the Public Employees Relations Act. The hearing officer of PERC found against the City, concluding it had unlawfully refused to bargain for the period after 1976-77.
Article I, section 6, Florida Constitution, while protecting the right of employees to maintain membership in a labor union and to collectively bargain, denies the right to strike to public employees.[1] Part II of *654 chapter 447, Florida Statutes, was designed to implement section 6 of Article I, Florida Constitution.[2]
It is PERC’s position that despite the final action taken under section 447.403 by the City Commission, the Union had a right to reject the resolution of the impasse reached under section 447.403 and demand bargaining de novo for a new contract. The City, on the other hand, contends that when the parties have submitted certain impasse items to legislative action and such action has been lawfully completed those items plus the previously negotiated items, if any, are a contract. Basic contract law,, which PERC and the Union have correctly cited and argued extensively in their briefs, clearly requires ratification and approval of a proposed agreement by both parties before either party is bound. This principle is recognized in section 447.309(4), Florida Statutes (1979). Clearly, then, the City would be obligated to bargain upon demand, if only basic contract principles apply, because of the Union’s failure to ratify the agreement. The City, because of the language of section 447.309(4), in the context of section 447.309 as a whole, suggests that it is not totally clear whether legislative action is conditioned upon the ratification of both parties. Ratification is clearly required under section 447.309(4) in the case of a contract reached without impasse. PERC, in its brief, contends that a contract to be “valid” must be ratified, with or without resolution of impasse; in the absence of a “valid” contract, there remains a continuing obligation to bargain. PERC distinguishes between “substantive” terms and conditions of employment (e. g., those establishing wages, hours of work, vacation and sick leave, etc.) from those such as “preambles, reopener clauses, or contract duration articles.” PERC acknowledges that Madison County Education Association and District School Board of Madison County, 4 FPER ¶ 4006 (1977), held that the terms and conditions of employment legislatively resolved by a public employer pursuant to section 447.-403(4)(d) become effective from the date of their resolution and need not be ratified by the employee organization involved.
We do not recognize the distinction which PERC argues between substantive terms and contract duration articles. It is compelling that the duration of an agreement is as substantive as the amount of sick pay provided. Chapter 447, Florida Statutes (1975) does not specifically authorize resolution of impasse as to length of a contract, but section 447.309(1) gives as the subject of collective bargaining “[Wjages, hours, and terms and conditions of employment.” A reasonable interpretation of “terms and conditions of. employment” would include the “period or duration” of a collective bargaining agreement. Both the Union and PERC concede that the contract period was a subject of impasse. If an item is the subject of lawful impasse, section 447.403 defines the manner of resolution. Perhaps, as the Union and PERC suggest, such inter *655 pretation will not serve to accomplish the statement of policy enunciated in section 447.201: “to promote harmonious and cooperative relationships between government and its employees, . . . ” but this is an area to be addressed by the Legislature rather than by this court.
After resolution of the impasse through legislative action, there is no obligation to bargain further as to the provision mandated by the legislative body. In Dade County Employees, Local No. 1368, AFSCME, AFL-CIO v. City of South Miami, 4 FPER ¶ 4065 (1978), the Commission stated:
If the parties do not ratify the negotiated provision of -a collective bargaining agreement, the agreement shall be returned to the representatives of the parties for further negotiations, but such negotiations are limited to the previously negotiated provision. There is no obligation on either party to bargain with regard to the provision mandated by the legislative body. (Emphasis added.)
No contention has been made that the City, in proceeding under section 447.403 with legislative action, did not act in good faith in what it deemed to be in the public interest including the interest of the public employees; therefore, there was no obligation on either party to bargain further.
The Union argues that if the interpretation we now reach prevails no public body will ever accept less than a multiple year contract. This danger was anticipated by the Legislature in its enactment of section 447.309(5), Florida Statutes (1975) limiting any collective bargaining agreement for public employees to three years. It is possible to envision many circumstances where the Union may not be pleased when the “legislative body” resolves an impasse against the interest of the Union. The contention can always be made that the public employer, as a party to the bargaining process, is unlikely to reverse itself where it sits as a “legislative body” when the procedure of section 447.403, Florida Statutes, is triggered. That same argument is equally applicable to hours and wages or other “terms and conditions of employment.” While in an inflationary period it may be in the interest of the public employees to be bound only for a minimum term, the employees may favor a maximum contract term if they have obtained an especially beneficial agreement.
That portion of the order of the Public Employees Relations Commission dated August 9, 1978, holding that Appellant had unlawfully refused to bargain for the period after the 1976-1977 fiscal budget year, is hereby REVERSED.
CROSS and ORFINGER, JJ., concur.

. Right to work. The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization. The right of em *654 ployees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike. Art. I, §-6, Fla.Const.

. Statement of policy. It is declared that the public policy of the state; and the purpose of this part, is to provide statutory implementation of s. 6, Art. I of the State Constitution, with respect to public employees; to promote harmonious and cooperative relationships between government and its employees, both collectively and individually; and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government. It is the intent of the Legislature that nothing herein shall be construed either to encourage or discourage organization of public employees. These policies are best effectuated by:
(1) Granting to public employees the right of organization and representation;
(2) Requiring the state, local governments, and other political subdivisions to negotiate with bargaining agents duly certified to represent public employees;
(3) Creating a Public Employees Relations Commission to assist in resolving disputes between public employees and public employers; and
(4) Recognizing the constitutional prohibition against strikes by public employees and providing remedies for violations of such prohibition. § 447.201, Fla.Stat. (1979).