BOOTH, Judge.
This cause is before us on appeal from a final order entered by the Public Employees Relations Commission (PERC) holding the Hollywood Municipal Employees Local 2432 not guilty of an unfair labor practice for refusing to execute an agreement and submit it to the members of the bargaining unit for ratification pursuant to Section 447.403(4)(e), Florida Statutes.[1]
On appeal, the City contends that PERC erred in failing to find that the Union had violated Section 447.403(4)(e). The City contends the impasse procedures of that statute required the Union to reduce an agreement to writing and submit it for ratification, following the legislative body’s resolution of the disputed impasse issues. That was also the determination of the hearing officer. PERC, on the other hand, rejected the conclusions of the hearing officer and adopted the Union’s position that the duty to reduce the agreement to writing did not arise until the parties had ratified all agreed-upon terms. PERC agreed with the Union that here there was no “agreement.”
The facts, as found by the hearing officer, are essentially undisputed. The City of Hollywood (City) and the Hollywood Municipal Employees Local 2432 (Union), while engaged in collective bargaining pursuant to Section 447.309, Florida Statutes, tentatively “signed off” on 31 proposals. The City then declared impasse, and some 19 proposals were submitted by the parties to a special master appointed by PERC. The parties agreed to the special master’s recommendations on four of the proposals but rejected the remainder. These disputed is-, sues were then resolved, after public hearing by the City Commission. City negotiators reduced to writing the agreement,[2] which consisted of the previously agreed-upon issues and those issues legislatively mandated by the City Commission. The Union found the agreement unsatisfactory as written and decided not to submit it to the bargaining unit employees for ratification.
The Union objected to some specific language in the agreement, and the agreement was revised. Thereafter, subsequent attempts were made by the City to have the Union submit the agreement for ratification. The Union refused each time to submit the proposed agreement for ratification and, further, decided to reject the 31 articles to which it had previously agreed. On December 8, 1982, the proposed collective bargaining agreement was *1038 submitted to, and ratified by, the City Commission. The hearing officer also found that, from the time of the City’s October 27, 1982, revision of the written document to the time of the City’s ratification meeting of December 8, 1982, neither Attorney Klausner nor any other representative of Local 2432 had identified or discussed with the City any dispute with the proposed agreement.
The City filed an unfair labor practice charge,[3] alleging the Union had violated Section 447.403(4)(e), Florida Statutes, by refusing to comply with the procedures outlined therein.[4] Hearing was held, and the hearing officer recommended that the Union be found guilty of an unfair labor practice for refusing to execute and submit a proposed collective bargaining agreement for a ratification vote to the employees it represents. The order of the hearing officer carefully reviews the background of impasse resolution legislation as follows:
In attempting to ascertain the legislative intent in the enactment of Chapter 80-367, Laws of Florida [impasse resolution], it is helpful to consider the legislative history which led to the amendment of Section 447.403 and the addition of subsection (4)(e), the interpretation of which is central to this case. When Part II of Chapter 447 was created in 1974, procedures for approval or rejection of a collective bargaining agreement and the procedures for resolution of negotiation impasses were set forth in Sections 447.-309 and 447.403. Although these provisions adequately covered the steps leading up to the execution of an agreement and the mechanics of the beginning stages of impasse resolution, there was a significant gap left with respect to what happens after impasse. No explicit statutory guidance was provided regarding how legislatively resolved issues at impasse were to be treated subsequent to the legislative body’s action, what happened to those issues which did not go through impasse resolution, whether the employees were to be given a chance to ratify an agreement based upon issues which were resolved through impasse, and how and when negotiations were to recommence after impasse, [emphasis theirs].
In the absence of statutory guidance, PERC filled in the gap and provided the details of the mechanics of impasse resolution after legislative action through its case law. However, this procedure was substantially disrupted when the court in City of Winter Park v. PERC and LIUNA, Local 515, 383 So.2d 653 (Fla. 5th DCA 1980),[5] stated that it felt PERC had no statutory authority to distinguish between substantive disputed impasse issues and disputed impasse issues of a *1039 contractual nature, for purposes of the implementation of legislative final action. In the particular situation involved, a duration clause had been legislatively resolved at impasse. The court held that the legislative resolution of the duration clause, coupled with the long-standing principle that there is no continuing obligation to bargain over items which are legislatively resolved, had the effect of foreclosing any bargaining on those issues resolved by the legislative body for so long as the legislative body decided the term would be, up to a limit of three years. Section 447.309(4).
The intent of House Bill 1655 and its companion Senate Bill 1204, introduced after the convening of the 1980 session of the Florida Legislature, as reflected in the title and accompanying legislative committee reports, was to codify and ratify the procedures for implementing legislatively resolved impasse issues and to reverse and supercede the principle set forth by the Fifth DCA’s ruling in City of Winter Park. From those bills came the following addition to Section 447.-403(4) impasse procedures:
(e) Following the resolution of the disputed impasse issues by the legislative body, the parties shall reduce to writing an agreement which includes those issues agreed to by the parties and those disputed impasse issues resolved by the legislative body [sic] action taken pursuant to paragraph (d). The agreement shall be signed by the chief executive officer and the bargaining agent and shall be submitted to the public employer and to the public employees who are members of the bargaining unit for ratification. If such agreement is not ratified by all parties, pursuant to the provisions of s. 447.-309, the legislative body [sic] action taken pursuant to the provisions of paragraph (d) shall take effect as of the date of such legislative body [sic] action for the remainder of the first fiscal year which was the subject of negotiations; however, the legislative body [sic] action shall not take effect with respect to those disputed impasse issues which establish the language of contractual provisions which could have no effect in the absence of a ratified agreement, including, but not limited to, preambles, recognition clauses, and duration clauses.
The hearing officer concluded:
By refusing to execute and submit a proposed collective bargaining agreement between the parties to the employees it represents for a ratification vote, Local 2432 committed an unfair labor practice within the meaning of Section 447.501(2)(a) and (c), Florida Statutes (1981).
Based upon the totality of the circumstances surrounding the negotiation process, Local 2432’s failure to meet and confer with the City or to submit coun-terproposals during the reduction of the proposed agreement to writing constituted an unfair labor practice within the meaning of Section 447.501(2)(a) and (c), Florida Statutes (1981).
The Commission issued its final order rejecting the hearing officer’s conclusions and held that the Union did not commit an unfair labor practice, stating:
The Hearing Officer’s discussion of the legislative history of Section 447.-503(4)(e), [sic] Florida Statutes (1981), is essentially correct. The purpose of the subject statutory provision was to reverse the court’s holding in City of Winter Park v. PERC, 383 So.2d 653 (Fla. 5th DCA 1980), which held that the legislative body could impose a duration clause without agreement by the union. However, the statute was not intended to change the process for resolution of disputed impasse issues by the legislative body. An underlying principle throughout the collective bargaining process is that either party can always say “no.” City of Tallahassee v. PERC, 410 So.2d 487 (Fla.1982). Before the obligation to execute and submit a document to membership for ratification arises, there must first be an agreement. In this case, there was no agreement.
*1040 On appeal, the City contends, inter alia, that PERC has incorrectly interpreted Section 447.403(4)(e) and that its rejection of the hearing officer’s order is clearly erroneous. We agree.
Section 447.403(4)(e), Florida Statutes, was designed to bring collective bargaining to an end at a point certain and thus provides:
Following the resolution of the disputed impasse issues by the legislative body, the parties shall reduce to writing an agreement which includes those issues agreed to by the parties and those disputed impasse issues resolved by the legislative body’s action taken pursuant to paragraph (d). The agreement shall be signed by the chief executive officer and the bargaining agent and shall be submitted to the public employer and to the public employees who are members of the bargaining unit for ratification.... [emphasis added]
PERC’s interpretation of subsection (4)(e), which allows the parties to resume bargaining, as to issues previously agreed to, after submission to impasse, and even after impasse items have been legislatively mandated, is not supported by the wording of the statute or the legislative intent[6] in enacting the statute. The statute specifies the agreement shall consist of “those issues agreed to by the parties and those disputed impasse issues resolved by the legislative body’s action taken pursuant to paragraph (d).”
The Union attempts to avoid this statutory definition on the ground that the 31 proposals agreed upon prior to impasse resolution were only “tentative.” The statutes, however, do not provide that a party can reserve the right to reject issues previously resolved and not submitted to impasse resolution. Such a provision would defeat the purpose of impasse resolution procedures to bring to an end the bargaining process.
It should be noted that the parties determine the issues to be presented to impasse resolution. In the event that an issue agreed to prior to impasse is dependent on one or more issues which are to be submitted to impasse resolution, then the concerned party must determine whether to submit that previously agreed to issue to impasse resolution as well.
As is pertinent here, Section 447.403, Florida Statutes, provides that, after declaration of an impasse:
(2) ... [T]he commission shall appoint, and submit all unresolved issues to, a special master acceptable to both parties.
(3) The special master shall hold hearings in order to define the area or areas of dispute, to determine facts relating to the dispute, and to render a decision on any and all unresolved contract issues.
Under the foregoing statutory provisions, the “area of dispute” and the “unresolved contract issues” were matters to be litigated before, and determined by, the special master. In the instant case, however, the special master’s determination, if any, on these matters was not challenged below and is not an issue on appeal.
A common element of all collective bargaining is that agreed upon items are tentative until a complete agreement is reached. According to subsection (4)(e), impasse resolution creates this complete agreement, and the tentatively agreed-upon items are no longer tentative but final, subject to ratification by members of the *1041 bargaining unit. Assuming the 31 proposals were tentative and the Union had the right to reject any or all of them, it clearly no longer had that right after the legislative body’s hearing on October 13, 1982. The Union’s attempt to reject these articles on November 24, 1982 was not timely or effective.
Section 447.403(4)(e), Florida Statutes, specifically requires the parties, after impasse resolution, to reduce the agreement, consisting of those issues agreed to by the parties and those issues resolved legislatively, to writing, sign it, and submit it to members of the bargaining unit for ratification.
Accordingly, the Commission’s order is reversed, except for the denial of attorney fees, which is affirmed, and the cause is remanded with directions that the hearing officer’s recommended order, which requires the Union to follow the procedures mandated in subsection (4)(e) and finds the Union guilty of an unfair labor practice, be adopted.
SHIVERS and JOANOS, JJ., concur.

. Set out infra at p. 1039.

. Following the declaration of impasse but prior to the City Commission’s October 13 meeting, the parties agreed to five of the nineteen provisions submitted to the special master.

. The Union filed an unfair labor practice charge against the City which was summarily dismissed by PERC on December 21, 1982.

. To facilitate negotiations, the parties adopted Ground Rule 8:
[WJhen agreement has been reached on any particular proposal, the parties shall jointly sign off on that proposal, subject to a complete agreement on all matters being reached. When such complete agreement has been reached, the parties agree to recommend its approval by their respective bodies;....
We hold, and both parties apparently agree, that “Ground Rule 8" cannot override the effect of Section 447.403(4)(e), Florida Statutes.

. City of Winter Park v. PERC, 383 So.2d 653 (Fla. 5th DCA 1980), prompted the Legislature to amend the impasse resolution procedures by the enactment of subsection (4)(e) of Section 447.403, the last sentence of which requires:
If such agreement is not ratified by all parties, pursuant to the provisions of s. 447.309, the legislative body’s action taken pursuant to the provisions of paragraph (d) shall take effect as of the date of such legislative body’s action for the remainder of the first fiscal year which was the subject of negotiations; however, the legislative body action shall not take effect with respect to those disputed impasse issues which establish the language of contractual provisions which could have no effect in the absence of a ratified agreement, including, but not limited to, preambles, recognition clauses, and duration clauses, [emphasis added]
This sentence has undone the effect of City of Winter Park, supra, by limiting the duration of impasse issue implementation to one year. This part of the statute is not at issue here.

. An analysis of the legislative history of subsection (4)(e) of Section 447.403, Florida Statutes, in particular House Bill 1655, the Watt Amendment to the House Bill, and the Bill Summary, reveals the intent of the Legislature was to provide an end to a potentially endless bargaining process.
The Bill Summary of House Bill 1655:
Following the resolution of the disputed impasse issues by the legislative body, the parties are specifically required to reduce the com-píete agreement to writing (including agreed-upon items, and legislatively resolved items), and submit the agreement for ratification pursuant to the existing provisions in s. 447.309. [emphasis added]
The Watt Amendment to House Bill 1655 deleted from the proposed subsection (4)(e) reference to returning to Section 447.309(4), which contains provisions for further bargaining. This shows the Legislature wanted an end to the bargaining process.