NORTHCUTT, Judge.
Amalgamated Transit Union Local 1593 has appealed a decision by the Public Em *347 ployees Relations Commission (PERC) regarding the proper application of the impasse provisions contained in Florida’s public employee collective bargaining law, set forth in Part II of Chapter 447, Florida Statutes (2011). See Fla. R. App. P. 9.030(b)(1)(C). We reverse.[1]
The Union is the collective bargaining agent representing bus drivers, street car operators, and other workers employed by the Hillsborough Area Regional Transit Authority (HART). In June 2010, the Union and HART began negotiating a new contract to succeed their existing one, which ended in September 2010. The parties reached agreement on seventy-one articles but could not agree on six others. In February 2011, HART declared an impasse on those six articles. PERC appointed a special magistrate to conduct a hearing and to recommend resolutions of the issues. The Union accepted all of the magistrate’s recommendations, but HART rejected the recommended resolutions on three articles.
HART scheduled a legislative body[2] hearing in September 2011 to resolve the three issues that remained at impasse. See § 447.403(4)(a). On the day of the scheduled hearing the parties reached a tentative agreement on those issues shortly before the hearing was to begin. In November 2011, the Union sent a proposed contract incorporating the new tentative agreement to its members with a recommendation to ratify, but the members rejected it.
The Union sought to return to the bargaining table for further negotiations, but HART refused. Instead, over the Union’s objection HART rescheduled the legislative body hearing for December 2011. The hearing went forward and the legislative body resolved the disputed issues in HART’s favor. HART then sent the Union a proposed agreement to ratify. When the Union refused to conduct a ratification vote, HART imposed the articles resolved by the legislative body. See § 447.403(4)(e).
Thereafter the Union filed charges with PERC alleging that HART committed an unfair labor practice by refusing to resume negotiations after the failed ratification vote, thus violating section 447.501(1)(a) and (c); conducting a legislative body impasse hearing instead of resuming bargaining; and unilaterally altering terms and conditions of employment by implementing the articles resolved at the impasse hearing. HART countered with an unfair labor practice charge premised on the Union’s refusal to hold a ratification vote on the proposed collective bargaining agreement tendered by HART after the legislative body impasse hearing.
PERC appointed a hearing officer to hear the charges. In August 2012, the hearing officer issued a recommended order in which he concluded that HART had committed an unfair labor practice on the three grounds the Union alleged and that the Union had not committed an unfair labor practice by refusing to conduct a ratification vote after the legislative body impasse hearing.
HART filed exceptions to the recommended order. PERC issued a final order granting several of the exceptions. It concluded that HART did not commit an unfair labor practice by refusing to return to bargaining after the Union members rejected the September 2011 tentative agree *348 ment, and it dismissed the Union’s charge. Amalgamated Transit Union, Local 1593 v. Hillsborough Area Reg’l Transit Auth., 39 F.P.E.R. 175, 2012 WL 6560996 (2012).
PERC’s resolution of this case was at odds with its prior decision in Amalgamated Transit Union, Local 1701 v. Sarasota County Board of County Commissioners, 36 F.P.E.R. 453, 2010 WL 6767889 (2010), aff'd, 88 So.3d 945 (Fla. 2d DCA 2012) (table decision) (“Sarasota County”). In that case the parties reached a tentative agreement which was then rejected by the union membership. The parties returned to bargaining, but when they could not agree on several issues, the county declared an impasse. The parties continued to negotiate after the impasse was declared, and they reached another tentative agreement. The union membership then rejected this second tentative agreement. The parties proceeded to the previously scheduled legislative body hearing, at which the legislative body ruled in favor of the county’s positions on the impasse issues. Afterward, the parties were unable to agree on a proposed contract to submit for ratification. They engaged in mediation and produced a tentative agreement. But the union rejected the agreement rather than submit it for a ratification vote by the membership. Thereafter, over the union’s objection the county imposed the provisions that had been approved at the legislative body hearing.
When deciding the parties’ respective unfair labor practice charges in Sarasota County, PERC declared that, by proceeding to a legislative body hearing after the union membership rejected the second tentative agreement, the parties had misapplied the impasse resolution procedure set forth in section 447.403. The Commission noted that, because the impasse statute ultimately allows a legislative body to unilaterally impose employment terms, it is an exception to the bargaining rights contained in Chapter 447. As such, PERC wrote, the statute must be strictly construed.
Having reached their second [Tentative Agreement], the parties resolved the existing impasse and were no longer at impasse, irrespective of the [employees’] eventual rejection of that TA. Because the parties were no longer at impasse, the County Commission was not authorized to act as the legislative body to resolve any bargaining issues, and the ensuing legislative body action was void from the outset. The County and the ATU should have resumed negotiations after the second TA was rejected by the employees. § 447.309(4), Fla. Stat. (2010) (providing that if an agreement is not approved by the employer and the employees, it will be returned for further negotiations); see also Martin County Education Association v. Martin County School Board, 29 FPER ¶ 324 (G.C. Summary Dismissal 2003) (determining that failure to return to negotiations following the employees failure to ratify a negotiated pay plan contravened the statute and the union erred in invoking the impasse procedure at that point instead).
(Emphasis supplied.) The Commission concluded that “because the legislative body’s resolution of the non-existent impasse was void,” the union did not commit an unfair labor practice by refusing to submit a document incorporating the legislatively resolved issues for ratification by its membership, and the county did commit an unfair labor practice “by imposing the results of that void action.” This court affirmed the decision. Sarasota Cnty. Bd. of Cnty. Comm’rs v. Almagamated Transit Union, Local 1701, 88 So.3d 945 (Fla. 2d DCA 2012) (table decision).
*349 As in Sarasota County, in the instant case the parties continued to bargain after the declaration of an impasse, and they reached a tentative agreement prior to the legislative body hearing. And as in Sarasota County, here the union membership thereafter rejected the tentative agreement. In both cases the respective legislative bodies then purported to resolve the disputed issues, the union locals declined to submit the resulting agreements for ratification by their members, and the rulings of the legislative bodies then were imposed by the employers. Yet, whereas PERC disapproved this outcome in Sarasota County, in this case the Commission endorsed it.
Generally we are obliged to give deference to an agency’s interpretation of a statute it is charged with implementing. But we need not do so when the agency erroneously interprets the statute or when it “suddenly change[s] its interpretation ... with little or no explanation.” See Commc’ns Workers of Am. v. City of Gainesville, 65 So.3d 1070, 1076 (Fla. 1st DCA 2011) (and cases cited therein); Manatee Educ. Ass’n, Local 3821 v. Sch. Bd. of Manatee Cnty., 62 So.3d 1176 (Fla. 1st DCA 2011).
Here, PERC did not expressly recede from its holding in Sarasota County that a legislative body is not authorized to resolve disputed issues when the parties have reached a tentative agreement following a declaration of impasse. Rather, the Commission attempted to explain away its Sarasota County precedent because in that case the parties could not agree on the terms of the proposed agreement after the legislative body improperly acted to resolve the outstanding issues.
The County Administrator thought the contract included the seventy-one items tentatively agreed-to by the parties and the items imposed by the legislative body. The Union thought the County knew that the earlier tentative agreements “were all or nothing packages.” Thus, the contract would be the status quo plus the items resolved by the legislative body. Because the negotiators could not agree on the items which were undisputed, the remedy was to return the parties to the bargaining table to resolve the confusion between them. This allowed them to identify the items in dispute, which would be subject to the impasse resolution process.
There is no such confusion here. Local 1593 and the Transit Authority had identified the seventy-one items to which they tentatively agreed and the six items at impasse. The parties availed themselves to the special magistrate process and they knew the three recommendations by the special magistrate which had been accepted as well as the three rejected recommendations. After comparing the facts found in Sarasota County with the facts found by the hearing officer here, we agree with the Transit Authority that Sarasota County is not controlling because the facts differ significantly. Therefore, the Transit Authority’s sixth exception is granted.
(Footnote omitted.)
PERC’s asserted basis for declining to follow Sarasota County in this case is unavailing. For one thing, the above-quoted description of the parties’ so-called “confusion” in Sarasota County appeared nowhere in PERC’s written final order in that case. Contrary to PERC’s representation here, the parties’ disagreement about the contents, of the proposed tentative agreement following the legislative body hearing played no part in the reasoning underlying the Sarasota County decision. Thus, the relative lack of “confusion” in this case was no basis for distinguishing it from Sarasota County.
*350 Second, PERC’s mischaracterization of the Sarasota County decision is simply fallacious. Having determined in that case that the legislative body proceeding was “void from the outset” because the parties had reached a tentative agreement and thus were no longer at impasse, it defies logic to now maintain that the decision turned on the fact that after the void legislative body hearing the parties disagreed about the terms of the agreement that stemmed from it.
Finally, as suggested by this court’s affirmance of it, PERC’s Sarasota County decision was legally sound. In that case the Commission was correct to construe the impasse statute narrowly— not only because it embodies an exception to the collective bargaining rights recognized in Chapter 447, but also because it implicates public employees’ rights to collectively bargain as set forth in the Florida Constitution. “[SJtatutes implicating constitutional rights must be ‘narrowly limited in their application according to the statutory language.’” B.C. v. Fla. Dep’t of Children & Families, 887 So.2d 1046, 1052 (Fla.2004) (quoting State v. Jackson, 650 So.2d 24, 26-27 (Fla.1995)).
Article I, section 6 of the constitution states:
The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization. The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike.
In Dade County Classroom Teachers’ Ass’n v. Ryan, 225 So.2d 903 (Fla.1969), the supreme court recognized that this provision endows public employees with the same constitutional rights to bargain collectively as private employees possess, excluding the right to strike. These rights are “no longer open to debate” and “may be enforced by the courts, if not protected by other agencies of government.” Dade Cnty. Classroom Teachers Ass’n v. Legislature, 269 So.2d 684, 687 (Fla.1972). Indeed, as part of the constitution’s bill of rights, the right to collectively bargain is considered to be fundamental. Hillsborough Cnty. Gov’tal Emps. Ass’n v. Hillsborough Cnty. Aviation Auth., 522 So.2d 358 (Fla.1988). Therefore, it may be abridged only when a compelling state interest is shown, a strict-scrutiny standard that is difficult to meet and that requires a showing that the statutory regulation employs the least intrusive means necessary to accomplish the legislative goal. Id. at 362.
PERC grounded its ruling in this case on City of Hollywood v. Hollywood Municipal Employees AFSCME Local 2432, 468 So.2d 1036 (Fla. 1st DCA 1985). See 39 F.P.E.R. 175. That decision interpreted section 447.403(4)(e), which addresses the steps to be taken “[fjollowing the resolution of the disputed impasse issues by the legislative body.” The City of Hollywood court remarked that “[s]ection 447.403(4)(e), Florida Statutes, was designed to bring collective bargaining to an end at a point certain.” 468 So.2d at 1040.
The Commission seized upon the latter statement in City of Hollywood as furnishing a policy basis for its decision in this case. PERC declared that requiring HART to resume negotiations with the Union “would frustrate and undermine the legislative intent through a potentially never ending cycle of negotiations leading to impasse, another special magistrate hearing, scheduling of the legislative body hearing, post-impasse acceptance by the negotiators, rejection by the bargaining unit employees, and a return to bargaining.” 39 F.P.E.R. 175. But, as mentioned, City of Hollywood addressed the procedure to be followed after impasse issues are resolved by the legislative body. *351 It did not involve the material circumstance present in this case and in Sarasota County, i.e., a legislative body proceeding that was not authorized by law because the parties were no longer at impasse. As PERC determined in Sarasota County, under the terms of the impasse statute such proceedings were void from the outset, and pursuant to section 447.309(4) the parties were required to resume negotiations after the tentative agreement was rejected by the union membership rather than proceed to a legislative body hearing.
Even when an agency is pursuing the policy objectives underlying the statutory scheme it is charged with enforcing, the agency may not disregard or expand upon the terms of the statutes themselves. Cf. State, Dep’t of Ins. v. Ins. Servs. Office, 434 So.2d 908, 910 (Fla. 1st DCA 1983) (noting that an agency’s rule may not “extend, modify, or conflict” with state law). This is especially so where, as here, the statutes implicate constitutional rights and therefore must be narrowly applied. PERC’s asserted policy concerns in no way undermined the legal efficacy of its construction of the impasse statute in Sarasota County. That construction was correct, and PERC erred by rejecting the hearing officer’s reliance on it in this case.
Accordingly, PERC’s order granting HART’s exceptions to the hearing officer’s recommended order is reversed. On remand, the Commission shall approve the hearing officer’s recommended order and shall impose remedies consistent with those it effected in Sarasota County.
Reversed and remanded with instructions.
DAVIS, C.J., and SILBERMAN, J., Concur.

. The Union has raised two other issues on appeal. We will not discuss those points because our resolution of the main issue moots them.

. The legislative body in this case is the board of directors of HART. See § 447.203(10).