475 So.2d 1221 (1985)
PALM BEACH JUNIOR COLLEGE BOARD OF TRUSTEES, Petitioner,
v.
UNITED FACULTY OF PALM BEACH JUNIOR COLLEGE, Respondent.
No. 63352.
Supreme Court of Florida.
August 30, 1985.
Rehearing Denied October 22, 1985.
*1222 Jesse S. Hogg of Hogg, Allen, Ryce, Norton & Blue, Coral Gables, Florida, for petitioner.
C. Anthony Cleveland and Steven A. Been, Tallahassee, for the United Faculty of Palm Beach Junior College, Phillip P. Quaschnick and Vernon Townes Grizzard, Tallahassee, for the Public Employees Relations Com'n, respondent.
J. Robert McClure, Jr., and Paul A. Saad, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tallahassee, for the Dist. of Trustees of Tallahassee Community College.
Richard F. Trismen of Baker & Hostetler, Orlando, for the Dist. Bd. of Trustees of Valencia Community College.
Richard H. Bailey of Harllee, Porges, Bailey & Durkin, Bradenton, for Manatee Junior College Bd. of Trustees.
Marian P. McCulloch of Greene, Mann, Rowe, Stanton, Mastry & Burton, Tampa, for Hillsborough Community College.
Chester B. Griffin of Neill, Griffin, Jeffries & Lloyd, Ft. Pierce, for Indian River Community College District Bd. of Trustees.
William W. Gilkey and Sally Foote Corcoran of Richards, Nodine, Gilkey, Fite, Meyer & Thompson, Clearwater, Michael K. Grogan and Joann M. Bricker of Coffman, *1223 Coleman, Henley & Andrews, Jacksonville, for Edison Community College.
Mark E. Levitt, W. Reynolds Allen, and Wayne L. Helsby of Hogg, Allen, Ryce, North & Blue, Tampa, for Miami-Dade Community College.
Richard H. Frank and Mark F. Kelly, of Frank & Kelly, Tampa, for Pinellas Classroom Teachers Assn. and Orange County Classroom Teachers Ass'n, Inc.
Pamela L. Cooper, Tallahassee, for the Fla. Teaching Profession-Nat. Educ. Ass'n.
Gene "Hal" Johnson, Tallahassee, for the Fla. Police Benevolent Ass'n, Inc.
EHRLICH, Justice.
This is an appeal from a decision of the First District Court of Appeal affirming an order of the Public Employees Relations Commission. The decision construed article I, section 6 of the Florida Constitution, relating to the collective bargaining rights of public employees. We have jurisdiction pursuant to article V, section 3(b)(3) of the Florida Constitution.
Contract bargaining between the bargaining agents for United Faculty of Palm Beach Junior College (United Faculty) and Palm Beach Junior College (the College) began in April 1980. On June 10, 1980, the parties agreed to a 9.5 percent wage increase. However, the College also submitted a proposed addition to its current management rights clause.[1] The addition would constitute a waiver by United Faculty of the right to bargain during the term of the contract about management actions which affected terms and conditions of employment. Such "impact bargaining" is normally required unless the union clearly and unmistakably waives the right to bargain on the matter. Palowitch v. School Board of Orange County, 3 FPER 280 (1977), aff'd, 367 So.2d 730 (Fla. 4th DCA 1979).
The parties were unable to agree about the clause, and United Faculty declared an impasse in June.[2] Mediation began in July. In August, United Faculty proposed several alternatives: withdraw the clause; postpone bargaining on the clause to the following year; list subjects covered by the clause; or agree to a combination of bargaining and consultation instead of the clause. The College rejected the proposals. On October 10, 1980, a special master appointed by the Public Employees Relations Commission (PERC) recommended the clause be excluded from any collective bargaining agreement. On October 30, the College proposed two alternative clauses[3] which were rejected by United Faculty.
*1224 On November 19, 1980, the College Board of Trustees resolved the impasse by mandating that the disputed clause be included in a contract to be offered to the union for ratification pursuant to section 447.403(4)(e) of Florida Statutes (1980 Supp.)[4] The contract subsequently presented to the union included the disputed clause, but also incorporated matters previously resolved in bargaining including the 9.5% wage increase. No ratification vote has occurred, but section 447.403(4)(e) provides for the legislative action to take effect automatically. The pay raise has been deposited in an escrow account pending resolution of the case now before us.
United Faculty filed an unfair labor practice complaint with PERC, alleging that the College refused to bargain because of its intransigence on the clause. In June 1981, PERC found the college had engaged in an unfair labor practice in bargaining to impasse on the waiver clause. United Faculty of Palm Beach Junior College v. Palm Beach Junior College Board of Trustees, 7 FPER 593 (1981). PERC ordered the Board of Trustees to rescind its November 19, 1980, action mandating the waiver clause and to offer a contract to United Faculty containing the provisions agreed upon in negotiations, but without the clause. The Board of Trustees appealed to the First District Court of Appeal, which affirmed the PERC decision, then-Judge Shaw dissenting. Palm Beach Junior College Board of Trustees v. United Faculty of Palm Beach Junior College, 425 So.2d 133 (Fla. 1st DCA 1983).
There is no question in this case that the College sought the waiver for the express purpose of preventing the union from demanding impact bargaining. The College says such a waiver is necessitated by Palowitch v. School Board of Orange County, 3 FPER 280 (1977), aff'd, 367 So.2d 730 (Fla. 4th DCA 1979). In Palowitch, the employer changed its semester system and in the process reduced the terms of some employee contracts from twelve months to ten. The union sought to bargain about the change in job status, but the employer refused. The district court enforced PERC's determination that, while a public employer is free to alter the semester system, it was obliged under Florida's Public Employees Relations Act (PERA), sections 447.201-.609 of Florida Statutes, to negotiate with the union about the resulting effect on "wages, hours, and terms and conditions of employment." In its order, PERC noted in passing that any waiver of the right to collectively bargain must be "clear and unmistakable." PERC also correctly distinguished management's clear right to unilaterally change the semester system, from the decision to alter employment conditions, which is a subject of collective bargaining.
In a Palowitch situation, the union could waive its right to bargain, for instance, by *1225 failing to demand bargaining when given advance notice of a specific change in conditions, or by negotiating for such a contingency during contract bargaining and agreeing to abide by the provision in the contract for such contingency. The question in this case is whether the College can insist to impasse that the union waive all impact bargaining for contingencies not provided for in the contract.
The Board of Trustees urges this Court to follow the federal precedent of NLRB v. American National Insurance Co., 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027 (1952). In American National, the Supreme Court held that it was not an unfair labor practice for an employer to demand to the point of impasse that a management rights clause (reserving certain management prerogatives) be included in any contract it signed with the union representing its employees. As the district court noted in its decision sub judice, federal labor law decisions are persuasive but not binding authority for judicial interpretations of the PERA. 425 So.2d at 138. The district court dealt with the American National precedent by distinguishing the disputed clause in American National from the instant clause, and by finding that public policy dictates a different outcome under the PERA.
A management rights clause like the one in American National merely recognizes an employer's right to make executive decisions. In Florida, management rights are recognized in section 447.209. The collective bargaining rights of employees are guaranteed by article I, section 6, of the Florida Constitution and the PERA, specifically section 447.301. Thus, a union's waiver of the right to collectively bargain is a waiver of rights reserved to employees. It is not a recognition of hitherto unrecognized management rights.
What the College bargaining agent demanded in this case bears no resemblance to the management rights clause in American National.[5] The College was not seeking recognition of management rights, provided for in section 447.209, but a waiver of rights under section 447.301 and article I, section 6. American National is therefore inapposite to the issue before us.
In private sector labor law, contractual waivers of the right to collectively bargain during the term of a contract are termed, inter alia, "waivers," "zipper clauses," or "wrap up clauses." "A zipper or integration clause purports to close out bargaining during the contract term and to make the written contract the exclusive statement of the parties' rights and obligations... . On occasion, the integration and waiver may be limited only to matters *1226 that were `discussed during the negotiation of this Agreement.'" R. Gorman, Basic Text on Labor Law, Unionization and Collective Bargaining 471-72 (1976) (the cited pages also contain an example of a typical zipper clause). See also 2 Collective Bargaining Negotiations & Contracts (BNA) 36:421-422 (1981) (examples of zipper clauses in recent collective bargaining agreements).
The National Labor Relations Board (NLRB) and the federal courts have recognized the propriety of zipper clauses, reasoning that a union "may relinquish the statutory right to bargain, if, as a part of the bargaining process, it elects to do so." NLRB v. Auto Crane Co., 536 F.2d 310, 312 (10th Cir.1976). See also e.g., NLRB v. Southern Materials Co., 447 F.2d 15 (4th Cir.1971); General Electric Co. v. NLRB, 414 F.2d 918 (4th Cir.1969); Timken Roller Bearing Co. v. NLRB, 325 F.2d 746 (6th Cir.1963).
However, zipper clauses are generally interpreted only to maintain the status quo of a contract, and are not to be used to allow an employer to make unilateral changes in working conditions without bargaining. The courts in Auto Crane and Southern Materials held that "the Company has no right to act unilaterally as to contract terms and subjects covered by [a zipper clause[6]]. The Company only has the right to decline the Union's request to negotiate or reconsider them during the life of the agreement." Auto Crane, 536 F.2d at 312.
We conclude that a union may contractually waive its statutorily guaranteed right to collective bargaining to the extent that it waives the right to demand bargaining to alter the status quo during the term of the contract. The clear purpose of zipper clauses is to permit both parties to agree to maintain the status quo during the term of the agreement, to prevent either party from seeking to reopen negotiations.
This position has already been adopted by PERC:
It is now axiomatic in Florida that neither a generalized management rights clause nor a "zipper clause" in a collective bargaining agreement grants an employer plenary authority to unilaterally alter any and all working conditions which are not explicitly delineated in the agreement. Nor will a labor organization's agreement of such generalized contract language, without more, be construed as a waiver of the right to negotiate concerning subsequent alterations of existing terms and conditions of employment.
Hillsborough County Police Benevolent Association v. City of Tampa, 5 FPER 1103 (1980). Accord GTE Automatic Electric Inc., 261 N.L.R.B. 1491 (1982).
While zipper clauses have been frequently addressed in private sector labor law, we can find no federal case dealing with an impact bargaining waiver in the context of contract negotiations. It may be that a union could agree to such a waiver, but whether an employer can insist to the point of impasse that such a waiver be included *1227 in a contract is a question so far unanswered in the private sector. The only indication we can find regarding impact bargaining waivers is found in an advice memorandum from the NLRB general counsel's office: Employer insistence "on a clause which clearly and unequivocally permits unilateral changes ... may be an indicium of bad faith bargaining." Advice Memorandum re Union Hospital Ass'n, Case No. 8-CA-12485, 102 L.R.R.M. (BNA) 1677 (1979). In the public sector, Wisconsin has found that an impact bargaining waiver may not be insisted on to impasse. Deerfield Education Ass'n v. Deerfield Community School District, 2 NPER 51-11023 (WERC 1980), aff'd, 3 NPER 51-12029 (Wis.Cir.Ct. 1981).
Florida's labor statute, the PERA, shares with the National Labor Relations Act (NLRA) a similar goal, but in a public sector context: "to promote harmonious and cooperative relationships between government and its employees, both collectively and individually ... [by] [r]equiring the state, local governments, and other political subdivisions to negotiate with bargaining agents duly certified to represent public employees." § 447.201, Fla. Stat. (1979). We find that a blanket impact bargaining waiver clause such as the one presented to us here is a drastic waiver of rights guaranteed by the PERA and article I, section 6, of the Florida Constitution. See City of Tallahassee v. PERC, 410 So.2d 487 (Fla. 1982). We suspect, as did the NLRB general counsel's office in Advice Memorandum re Union Hospital Ass'n, Case No. 8-CA-12485, 102 L.R.M. 1677 (1979), that insisting on such a waiver in the private sector would indicate bad faith bargaining. We find that, in Florida public sector labor relations, it most certainly is bad faith bargaining.[7] We therefore hold that it is an unfair labor practice for a public employer to insist to impasse on a blanket impact bargaining clause.
In its order, PERC instructed the College Board of Trustees to rescind its legislative action imposing the waiver clause and to offer the remainder of the contract as agreed to during negotiations and as amended by the legislative action as to matters other than the waiver clause. PERC reasoned:
If, as the College requests, we were to allow it a further opportunity to negotiate an alternative "impact" bargaining waiver provision, we would be allowing it to do precisely that which we have just condemned: to unilaterally prevent the execution of a final agreement until agreement is reached on a permissive subject of negotiations.
7 FPER 12300 at p. 596.
Although PERC's concern is well founded, the problem it fears here is possible with any subject which may not be insisted upon to impasse. In addition, section 447.203(14) bars PERC from imposing an agreement where none has been reached. None was reached in this case because, obviously, neither side accepted the agreement without resolution of the waiver issue. See Justice Shaw's discussion of the remedy in the lower court decision. 426 So.2d at 144 (Shaw, J., dissenting).
In this case, the bargaining waiver, which should never have been taken to impasse, much less mandated by the Board of Trustees, so tainted the impasse procedure that it is impossible to determine what the parties might have agreed to without the dispute over the waiver. The parties should be returned to the status quo as it existed at the moment impasse was declared.
Accordingly, we approve the DCA decision as it relates to insisting on the waiver clause to impasse, and disapprove the decision *1228 as it relates to the remedy. We remand for action pursuant to this decision.
It is so ordered.
BOYD, C.J., and OVERTON, ALDERMAN and McDONALD, JJ., concur.
NOTES
[1] The proposed addition provided:

Whenever the Employer exercises a right to [sic] privilege contractually reserved to it or retained by it, the Employer shall not be obliged to bargain collectively with respect to the effect or impact of that exercise on individual unit members or on the unit as a group, or to postpone or delay effectuation or implementation of the management decision involved for any reason other than an express limitation contained in this Agreement.
[2] Impasse procedures are established by section 447.403, Fla. Stat. (1980 Supp.). If a dispute exists, either party may declare an impasse. The parties may then agree to hire a mediator. If no mediator is appointed, either party may request PERC to appoint a special master, who makes findings of fact and renders a decision on disputed issues. If either party rejects any part of the special master's recommendation, the chief executive officer of the public employer and the union each submit recommendations regarding the dispute to the legislative body governing the public employer. After a public hearing, "the legislative body shall take such action as it deems to be in the public interest, including the interest of the public employees involved, to resolve all disputed impasse issues." § 447.403(4)(d). A contract is prepared, signed by the chief executive officer, and presented to the union for a ratification vote. If union members do not ratify the contract, the issues resolved by legislative action automatically take effect, with the exception that "the legislative body's action shall not take effect with respect to those disputed impasse issues which establish the language of contractual provisions which could have no effect in the absence of a ratified agreement, including, but not limited to, preambles, recognition clauses, and duration clauses." § 447.403(4)(e).
[3] The first alternative proposal stated:

It is clearly and unmistakably understood by the parties hereto, and agreed, that the reservation or retention of a right, or the existence of a right, under this Article or emanating from some other source, within or independent of this Agreement, comprehends, includes and encompasses the authority, without further bargaining, to act and implement, as well as the rights to engage in decision making. It is assumed that decisions lawfully arrived at and which are contractually proper will be so implemented, and questions as to the effects or impacts of such implementations and consequential actions shall not be subject for mandatory bargaining during the term of the Agreement.
The parties also agree, however, to meet and confer, at the request of either, although not to bargain in the legal sense, as to such impacts or effects.
The second alternative proposal stated:
The right to take unilateral action refers to all rights described in Section A, and is not qualified by or subject to any duty to bargain over the effects or impacts of actions taken or of consequential, reasonable changes in terms or conditions of employment made in consonance with such actions.
[4] In PERC's decision in the instant case, the Commission adopted the doctrine that issues which may not be bargained to impasse may not be resolved by the impasse procedure. Therefore, based on the conclusion we here approve that the waiver clause in this case could not be bargained to impasse, the dispute over the clause could not be resolved by legislative action. This is supported by the observation that bargaining rights guaranteed by the Florida Constitution and by statute may not be taken away by the legislative body.
[5] In fact, the management rights clause in American National is strikingly similar to the management rights provision of chapter 447. The American National clause stated:

The right to select and hire, to promote to a better position, to discharge, demote or discipline for cause, and to maintain discipline and efficiency of employees and to determine the schedules of work is recognized by both union and company as the proper responsibility and prerogative of management to be held and exercised by the company, and while it is agreed that an employee feeling himself to have been aggrieved by any decision of the company in respect to such matters, or the union in his behalf, shall have the right to have such decision reviewed by top management officials of the company under the grievance machinery hereinafter set forth, it is further agreed that the final decision of the company made by such top management officials shall not be further reviewable by arbitration.
343 U.S. at 398, 72 S.Ct. at 826. Florida law provides:
It is the right of the public employer to determine unilaterally the purpose of each of its constituent agencies, set standards of services to be offered to the public, and exercise control and discretion over its organization and operations. It is also the right of the public employer to direct its employees, take disciplinary action for proper cause, and relieve its employees from duty because of lack of work or for other legitimate reasons. However, the exercise of such rights shall not preclude employees or their representatives from raising grievances, should decisions on the above matters have the practical consequence of violating the terms and conditions of any collective bargaining agreement in force or any civil or career service regulation.
§ 447.209, Fla. Stat. (1981). Arbitration is guaranteed to public employees by § 447.401; there is no such provision in private sector labor law.
[6] The clause in Auto Crane reads:

22.1 This Agreement is subject to amendment, alteration, or addition only be a subsequent written agreement between and executed by the Company and the Union. The waiver of any breach, term, or condition of this Agreement by either party shall not constitute a precedent in the future enforcement of all these terms and conditions. The parties acknowledged that during the negotiations that resulted in this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Agreement. Therefore, the Company, and the Union, for the life of this Agreement, each voluntarily and unqualifiedly waive the right and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matter referred to, or covered in this Agreement, or with respect to any matter or subject not specifically referred to or covered in this Agreement, even though such subjects or matters may not have been within the knowledge or contemplation of either or both parties at the time they negotiated or signed this Agreement.
536 F.2d at 311-12 (emphasis added).
[7] While not an issue here, and therefore not decided, we question whether even an attempt by an employer to enforce such a clause, properly bargained for and won, would be permissible under article I, section 6, for "the collective bargaining process for public employees involves many special considerations, [and] is not the same as in the private sector." City of Tallahassee v. PERC, 410 So.2d at 487. See also Dade County Classroom Teachers' Ass'n v. Ryan, 225 So.2d 903 (Fla. 1969).