885 So.2d 494 (2004)
CITY OF WINTER SPRINGS, Appellant,
v.
WINTER SPRINGS PROFESSIONAL, etc., Appellees.
No. 1D03-3157.
District Court of Appeal of Florida, First District.
November 5, 2004.
*495 Jeffery E. Mandel and David A. Young, Akerman Senterfitt, Orlando, for Appellant.
Tobe Lev, Egan, Lev & Siwica, P.A., for Winter Springs Professional Firefighters, Local 3296, Orlando, and Jack E. Ruby, Florida Public Employees Relations Commission, Tallahassee, for Appellees.
HAWKES, J.
Appellant, City of Winter Springs, appeals from a final order of the Public Employee Relations Commission [PERC], *496 finding that Appellant committed unfair labor practices by imposing "pay freeze" language on Appellee's, Winter Springs Professional Firefighters' [Union] members in a new collective bargaining agreement [CBA] for 2001-2002, and by imposing a management rights article that had been amended after the Union declared an impasse. We reverse PERC's final order on both issues and remand for a determination consistent with this opinion.

Procedural & Factual History
Appellant and the Union have had a collective bargaining relationship since 1991. While previous CBA's were silent on the issue, the 1997 CBA provided that if the parties did not reach a new CBA by the time the current CBA expired, wages would be "frozen" until a new CBA was reached. The "pay freeze" language was renewed in subsequent CBA's through September 30, 2001.
In September of 2001, the Union notified Appellant it wished to renegotiate several articles that had been included in previous CBA's, including possible removal of the "pay freeze" language. During formal negotiations for the 2001-2002 CBA, Appellant sought to continue the "pay freeze" language and add a management rights article. The Union did not accept these proposals, and in February 2002, declared an impasse. The parties waived the Special Master process and no subsequent resolution was reached. The Union argued the management rights article could not be taken to impasse because it waived the Union's right to bargain.

Impasse Resolution Hearing Before the City Council
On October 24, 2002, in accordance with section 447.403(4), Florida Statutes, both parties submitted their positions and written recommendations for resolving the impasse to the legislative body, and to each other.[1] Appellant's recommendations contained an amended management rights proposal that was more favorable to the Union. The proposal included a proviso that it was not intended to waive any of the Union's rights to impact bargain.
On October 29, 2002, an impasse resolution hearing was conducted before the Winter Springs City Council. The Union maintained its objection to the management rights article, but the Council ultimately adopted the amended version; the "pay freeze" language was again imposed for any hiatus following the 2001-2002 CBA. Though the resulting CBA was presented for ratification to the Union, it was not presented to the bargaining unit employees.
The Union then filed an unfair labor practice charge, alleging Appellant violated section 447.501(1)(a) and (c), Florida Statutes by imposing the "pay freeze" language and the management rights article through the impasse process. After an evidentiary hearing, the hearing officer issued his recommended order, finding the Union had no reasonable expectation to continued wage increases following expiration of the 2000-2001 CBA. The hearing officer found the history between the parties was more supportive of the "pay freeze" language as constituting status quo, and thus, the City's imposition of the language in the 2001-2002 CBA did not violate the collective bargaining laws. However, the hearing officer found Appellant violated the statute, and therefore *497 committed an unfair labor practice, by imposing the management rights article because the City's proposal had been amended following declaration of impasse, and because it contained a waiver of the Union's right to impact bargain.
PERC then issued its final order, rejecting the hearing officer's finding regarding the "pay freeze" language, and instead finding the imposition of this language in the 2001-2002 CBA constituted an unfair labor practice. Additionally, PERC found Appellant also committed an unfair labor practice merely by proposing an amended management rights article because the amendment occurred after declaration of impasse. PERC never reached the issue of whether the management rights article contained a waiver of the Union's right to impact bargain.

Imposition of the "Pay Freeze" Language
The court must determine whether imposing "pay freeze" language in a subsequent CBA following impasse resolution proceedings, constitutes an unfair labor practice within the meaning of section 447.501(1)(a) and (c), Florida Statutes.[2]
Agencies are bound to honor a hearing officer's findings of fact unless they are not supported by competent, substantial evidence. Belleau v. Dep't of Environ. Protection, 695 So.2d 1305, 1307 (Fla. 1st DCA 1997) (citations omitted).[3]
In the present case, the hearing officer found the prior CBA expressly limited anniversary pay raises to the term of the agreement. As a result, the hearing officer found persuasive the City's argument that the anniversary pay raises had never become part of the status quo. Moreover, the hearing officer found that both sides were aware pay raises would stop when the contract expired; consequently, the employees did not have a reasonable expectation that the annual raises would continue. The history between the parties suggested to the hearing officer that the "pay freeze" language was more closely in line with the status quo.
To support its order, PERC relies on some of its previous orders and a Florida Supreme Court case for the proposition that a legislative body may not impose a waiver of bargaining rights. PERC's reliance is misplaced. In those situations there was an explicit waiver of the employer's obligation to bargain over wages, hours, terms and conditions of employment. Notably, Palm Beach Junior Coll. Bd. of Tr. v. United Faculty of Palm Beach Junior Coll., 475 So.2d 1221, 1223 (Fla.1985) involved a management rights clause which clearly stated the employer was not obliged to bargain collectively. PERC also cites to a previous order which held a party may agree to a waiver in prior contracts, but the party may not renew the waiver indefinitely. As a consequence, PERC concludes it is irrelevant that the Union agreed to the pay freeze language in prior contracts, and Appellant violated its bargaining position by imposing the "pay freeze" language because it contained a waiver of the employees' bargaining rights.
*498 The hearing officer is correct that wages, hours, terms and conditions of employment are mandatory subjects of bargaining.[4]See § 447.309(1) Fla. Stat. (2002), and Citrus, Cannery, Food Processing and Allied Workers v. City of Sarasota, 29 FPER ¶ 87 (2003). Absent waiver, exigent circumstances, or legislative body action after bargaining impasse, changes to such subjects cannot be made "without providing notice to the employee's bargaining agent and an opportunity to conduct meaningful negotiations before implementing the change." See Citrus, Cannery, Food Processing and Allied Workers 29 FPER ¶ 87.
The disagreement between the hearing officer and PERC seems to rest on whether the Union employees, as part of the status quo, established entitlement to continued receipt of wage increases when a CBA expired. PERC maintains the employees had a right to continue the status quo and the imposition of the "pay freeze" language waived this right to continued receipt of provided benefits. However, as noted by the hearing officer, the parties have repeatedly used the "pay freeze" language in prior CBA's thus indicating the status quo, if any, was that the employees had no expectation of continued receipt of wage increases once a CBA expired.
Here, the proposal contained the same "pay freeze" language that had been used from 1996-2001. The hearing officer found the CBA's plain language merely continued the existing practice of freezing wages until a new CBA was reached. A waiver, if there was one, would have to be clearly stated.[5] A review of the challenged provision reveals there is nothing waiving Appellant's obligation to bargain, nor is there any provision requiring the Union to waive its bargaining rights over wage increases.[6]
When a dispute exists over terms and conditions of employment to be incorporated into a CBA, the parties are entitled to have the impasse resolved by a legislative body. See § 447.403(4)(c)-(e), Florida Statutes (2004).[7] "It is appropriate to declare impasse if, after a reasonable period of negotiation, a dispute exists between the parties regarding a mandatory subject of bargaining." United Faculty of Florida v. Florida Bd. of Education, 28 FPER ¶ 33232 (2002). Appellant did nothing wrong by maintaining its request to insert the language, and when the dispute could not be resolved, the proper statutory process was utilized.
No waiver of the Union's bargaining rights occurred by Appellant's legislative *499 imposition of the "pay freeze" language to the 2001-2002 CBA. PERC erred by finding Appellant had violated the collective bargaining laws by imposing the language, and thus, the final order must be reversed on this issue.

Imposition of the Management Rights Article
The second issue we must decide is whether PERC erred by concluding Appellant committed an unfair labor practice by imposing a management rights article that was amended following declaration of impasse.
"[A]n agency's interpretation of a statute it is charged with administering should not be rejected so long as its interpretation is consistent with the legislative intent and is supported by competent, substantial evidence." Cleveland v. Florida Dep't of Children and Families District: 07 Seminole Unit 55205, 868 So.2d 1227, 1229 (Fla. 1st DCA 2004).[8]
PERC concedes the facts of the case raise the "novel" issue of whether a party can materially change its last proposal presented before declaration of impasse, where the parties waived the appointment of a special master and the amended proposal was submitted to the legislative body prior to the impasse resolution hearing. Appellant correctly notes that PERC itself has ruled that after the special master process has been completed and the special master's recommendation issued, parties may change their positions before the legislative body without violating the mandatory duty to bargain in good faith pursuant to section 447.501(1)(c), provided the position is a topic which has been previously negotiated at the bargaining table. See City of Miramar v. Gen. Ass'n of Miramar Employees, 7 FPER ¶ 12357 (1981). Otherwise, restricting parties from making any changes "would discourage both settlement efforts in general and post-impasse negotiations in particular." City of Miramar, 7 FPER ¶ 12357.
It is clear the management rights article was a topic that had previously been negotiated at the bargaining table. To support its finding that an unfair labor practice occurred when the management rights article was amended after declaration of impasse, PERC relied on its own prior decisions recognizing that "[an] insulated period begins when the special master process is waived and ends when the legislative body resolves the impasse." Jacksonville Ass'n of Firefighters, IAFF, Local 122 v. City of Jacksonville, 15 FPER ¶ 22327 (1989). The City of Jacksonville case, however, held that parties were prohibited from engaging in ex parte communications with the legislative body regarding the merits of their position when the legislative body assumes the role of a quasi-judicial body.[9] The record is clear that no ex parte communication was made by management to the legislative body. Appellant sent by fax a copy of its written recommendations to counsel for the Union on the same day it sent them to the legislative body.
We agree with Appellant that PERC's application of its insulated period rule, as applied to the facts of this case, appears to be contrary to the statutory framework provided in section 447.403(4)(a) and (b). Here, if the parties utilized a special master, who in turn, submitted a recommended decision to the legislative body, *500 either party would have had the right, under the statute, to reject the special master's recommendation and submit its own recommended proposal to the legislative body as a means of resolving the impasse. Similarly, if the parties agreed to waive the appointment of the special master altogether, they had the right, as provided in section 447.403(2)(a), to proceed directly to resolution of the issues before the legislative body. Clearly that body has the same powers to conduct a hearing as does the special master, and the same proposed changes in the bargaining process could be submitted by either or both parties to the legislative body as could be made to the special master during impasse.
It appears the legislature, by its enactment of the resolution of impasse provisions of section 447.403, chose to provide an alternative to the special master process, whereby parties can seek a resolution of their disagreements before the public employer, acting in its quasi-judicial role. It seems inconsistent, given the statutory framework, for PERC to recognize that if parties utilize the special master process to its conclusion, either party may then change its position at impasse before the legislative body, as a means of encouraging settlement efforts, but, if the parties instead choose to waive such process, they cannot later alter their previously negotiated positions before the legislative body. Such an interpretation is inconsistent with legislative intent, and therefore, clearly erroneous.
PERC's attempted distinction between the facts in City of Miramar and the present case appears superficial. PERC argues that in City of Miramar, the party changed its position during the special master process, whereas here, the amended proposal was presented to the legislative body instead of a special master. This argument fails to consider the statutory procedure allowing the parties to waive the appointment of a special master and proceed directly to impasse resolution proceedings by the legislative body.
We therefore hold, pursuant to section 447.403, that parties are allowed to change their positions during impasse, whether before a special master or before a legislative body, provided that the amended proposals do not touch on a topic that has not been previously negotiated at the bargaining table. Thus, both the hearing officer and PERC erred when they found that Appellant committed an unfair labor practice by submitting an amended management rights proposal to the legislative body, following declaration of impasse.
REVERSED and REMANDED for a determination consistent with this opinion.
ERVIN, J., Concurs with opinion; ALLEN, J., Dissents with opinion.
ERVIN, J., concurring.
I fully concur with Judge Hawkes' opinion. I write separately only to address what appears to be a misconception by Judge Allen as to the correct standard of review over the Public Employee Relations Commission's construction of the contractual "pay freeze" language. His dissenting opinion appears to suggest that our standard is that of clearly erroneous, meaning that a reviewing court should defer to the agency's interpretation so long as it falls within the permissible range of interpretations. See State Dep't of Health & Rehabilitative Servs. v. Framat Realty, Inc., 407 So.2d 238, 242 (Fla. 1st DCA 1981). This extremely deferential rule has traditionally been applied to an agency's construction of a regulatory statute it is charged with enforcing. See Fla. Wildlife Fed'n v. Collier County, 819 So.2d 200, 203 (Fla. 1st DCA 2002). It was perhaps best *501 described in this court's seminal decision in McDonald v. Department of Banking and Finance, 346 So.2d 569, 579 (Fla. 1st DCA 1977), as follows:
[W]here the ultimate facts are increasingly matters of opinion and opinions are increasingly infused by policy considerations for which the agency has special responsibility, a reviewing court will give correspondingly less weight to the hearing officer's findings in determining the substantiality of evidence supporting the agency's substituted findings.
As McDonald instructs, it is only where an agency's opinion is "infused with special considerations for which" it has been entrusted "special responsibility" that its decision should be honored by a reviewing court.
The language of the contract, set out by Judge Hawkes in footnote six of his opinion, clearly and unambiguously provides that salaries will remain frozen at the rate established under the expired collective bargaining agreement until a new agreement is reached. The Commission, not a party to the contract, need not be accorded any deference regarding an interpretation of a contract that is not susceptible to different interpretations. Because the interpretation of a contract is one of law, it is therefore the subject of de novo review. See Avatar Dev. Corp. v. De Pani Constr., Inc., 834 So.2d 873, 876, n. 2 (Fla. 4th DCA 2002), and, if a contract is on its face clear and unambiguous, a reviewing court will enforce such language according to its terms. See Paddock v. Bay Concrete Indus., Inc., 154 So.2d 313, 315 (Fla. 2d DCA 1963). Thus, the important policy considerations, referred to by Judge Allen, are non-existent in circumstances where a contract, as here, plainly expresses the parties' intent.
ALLEN, J., dissenting.
The concept of maintenance of the status quo is a settled proposition in Florida public employment collective bargaining law. Consistent with this concept, when a collective bargaining agreement expires, the status quo regarding public employee wages under the expired collective bargaining agreement must be maintained during negotiation of a new agreement, and it has been recognized that the best evidence of the status quo under the expired contract is the precise wording of the expired contract. But when the right to maintenance of the status quo regarding wages during this interim period has been specifically and voluntarily waived through contractual agreement between the parties to a collective bargaining agreement, such as occurred in the 1997-2001 collective bargaining agreements between the parties in the present case, the involved public employees may not rely upon the status quo doctrine for interim continuation of the wage provisions of an expired agreement. See generally Escambia Education Association v. School Board of Escambia County, 10 FPER ¶ 15160 (1984). See also School Board of Orange County v. Palowitch, 367 So.2d 730 (Fla. 4th DCA 1979).
Although public employees have no obligation to bargain away their right to maintenance of the wage status quo during the interim period between collective bargaining agreements, they sometimes elect to exchange their rights under this valuable bargaining issue for other contract concessions from public employers. This is what occurred in the negotiations of the parties to this appeal in connection with their 1997-2001 collective bargaining agreements.
The first issue presented in this appeal is whether the appellant committed an unfair labor practice when, without the consent *502 or agreement of the public employees, it perpetuated the waivers contained in the 1997-2001 agreements (the "pay freeze" provisions) beyond the interim period between the 2000-2001 and 2001-2002 agreements by its inclusion of the "pay freeze" language in the city-commission-adopted 2001-2002 collective bargaining agreement. The appellant contends that the inclusion of the 2001-2002 "pay freeze" provision was not a compelled waiver of any public employee bargaining rights, but was instead merely an expression of the preexisting status quo as expressed in the parties' earlier collective bargaining agreements. PERC has concluded, however, that, while voluntary waivers of the right to interim maintenance of the wage status quo under an expired agreement are lawful, such waivers may not be relied upon to establish the status quo expectations of the parties under succeeding collective bargaining agreements and to thereby excuse any need for a voluntary public employee waiver under the succeeding agreements. Stated otherwise, PERC's position is that waivers of this sort are acceptable if they are voluntarily given by public employees, but they may not be forced upon public employees in succeeding agreements simply because they were agreed to in prior contracts.
The policy supporting PERC's ruling is explained as follows: If public employees agree to such a waiver in a single collective bargaining agreement, the waiver should not be considered the status quo for future agreements because this would create a vicious cycle under which a single waiver would establish a status quo, thus removing any future requirement for a voluntary waiver and limiting public employee bargaining rights as to the issue in perpetuity. Because this policy seems reasonable to me, because it appears to be generally consistent with decisional law of the Florida Supreme Court, see, e.g., Palm Beach Junior College Board of Trustees v. United Faculty of Palm Beach Junior College, 475 So.2d 1221 (Fla.1985), and because establishment of the policy falls within PERC's authority under Chapter 447 of the Florida Statutes, see, e.g., Public Employees Relations Commission v. Dade County Police Benevolent Association, 467 So.2d 987 (Fla.1985), I would not disapprove the policy.
PERC's application of the long-standing insulated period rule in the context of the facts of the present case also seems reasonable to me and fully consistent with the important public policy rationale underlying the rule. See, e.g., Jacksonville Association of Firefighters v. City of Jacksonville, 15 FPER ¶ 20327 (1989); IAFF, Local 2135 v. City of Ocala, 5 FPER ¶ 10252 (1979), aff'd, 394 So.2d 1156 (Fla. 1st DCA 1981). I would therefore affirm the order under review as to both of the points on appeal.
NOTES
[1] Though the City was the employer, section 447.203(10), Florida Statutes provides that the "legislative body" for purposes of resolving an impasse, can be the governing body of a municipality. Such was the case here, when the Winter Springs City Council sat as the legislative body.
[2] The statute provides that a public employer is prohibited from interfering with the collective bargaining rights of public employees, and is further prohibited from refusing to bargain collectively in good faith. § 447.501(1)(a) and (c), Florida Statutes (2004).
[3] In such a situation, the appellate court reviews the record to determine if there was sufficient evidence to support the original finding of fact by the administrative law judge. Beverly Healthcare Kissimmee v. Agency for Health Care Admin., 870 So.2d 208, 212 (Fla. 5th DCA 2004).
[4] However, if a salary proposal contains a waiver of the employees' right to bargain, it would be transformed into a permissive subject of bargaining, which could not be taken to impasse. See United Faculty of Florida v. Florida Bd. of Education, 28 FPER ¶ 33232 (2002).
[5] See City of Delray Beach v. Prof'l Firefighters of Delray Beach, Local 1842, Int'l Ass'n of Firefighters, 636 So.2d 157, 162 (Fla. 4th DCA 1994) ("The employee's bargaining rights as a rule are included [in a CBA], unless specifically waived," and "[w]ithout express waiver language, the language in the contract cannot simply be interpreted to "imply" waiver.").
[6] The disputed language reads: "Any pay increases after October 1, 2002, are subject to the parties agreeing to same and if no agreement is reached, the employee's salaries will remain frozen at their September 30, 2002 rate until a new collective bargaining agreement is reached." This language is the same language used in the previous CBA's except for the applicable year provisions.
[7] See also Osceola Classroom Teachers Ass'n. v. School Bd. of Osceola County, 4 FPER 4066 (1978) (citing Pinellas County Police Benevolent Ass'n, 3 FPER 205) (unilateral changes to wages, hours, and terms of employment may only be made after conclusion of the section 447.403 impasse procedure).
[8] See also Doyle v. Dep't of Business Reg., 794 So.2d 686, 690 (Fla. 1st DCA 2001) (applying clearly erroneous standard).
[9] PERC also relies on IAFF, Local 2135 v. City of Ocala, 5 FPER ¶ 10252 (1979) for the same idea. However, there too, a party made an ex parte contact with members of the legislative body.